# CHARLESTON.

CHICAGO TOWEL COMPANY *v.* C. T. REYNOLDS

(No. 6537)

Submitted February 18, 1930.   Decided February 25, 1930.

*Daugherty & Daugherty,* for appellant.
*Perry & Perry,* for appellee.

MAXWELL, JUDGE:

C. T. Reynolds, appellant, while engaged in the service of F. W. Means & Company in the towel and linen supply business, at Huntington, entered into a contract with his employer which provided that he would not engage in the same business with any other person or corporation, directly or indirectly, while in the employ of said company, and that for a period of five years after the termination of his said employment he would not re-engage in the same business in the city of Huntington or in any other place or territory where he had worked for said company. Paragraph six of the contract provided: "It is mutually agreed that the employment created by this contract may be terminated by either party at any time by giving the other one week's notice of the intention to do so, or without notice for good and sufficient cause. * * *." About three and one-half months after entering into said contract he was discharged by said company. Approximately four years thereafter, Reynolds entered into the employ of Sanitary Towel & Linen Supply Company at Huntington, a rival concern of the appellee which is the successor to F. W. Means & Company. From a decree of the circuit court of Cabell County perpetuating an injunction restraining Reynolds from working for Sanitary Towel & Linen Supply Company, he appeals.

The appellant contends, *inter alia,* that the restriction imposed on him for five years is illegal and void; that inhibitions against re-employment, such as are contained in said contract, are unduly restrictive and unreasonable. Although we find no cases in point in this State, we are not unmindful of the fact that many cases are to be found in other jurisdictions dealing with contracts of this sort. The element of time, the extent of the area, and the conditions of the parties are all to be considered in determining the broader question of the reasonableness of such restrictions, not only as to the immediate parties but as to the public generally. The stand-

ard in all these cases seems to be reasonableness, and with that in view each case must stand on its own facts and circumstances.

There is another proposition, however, preliminary and basic in its nature, which is controlling in this case. Assuming for purposes of discussion, that the contract is not unduly restrictive, can the plaintiff prevail in a court of equity in view of the conduct of Means & Company?

The appellee as successor of F. W. Means & Company cannot, of course, assert any position under said contract that the said Means Company would not be permitted to assert. The rights and equities of a successor do not rise higher than those of his predecessor. What, therefore, would be the standing of Means & Company if it were seeking injunctive relief against appellant on the basis of said contract? The query must be answered in the light of the axiomatic principle of equity that he who comes into equity must come with clean hands. "While a court of equity endeavors to promote and enforce justice, good faith, uprightness, fairness, and conscientiousness on the part of the parties who occupy a defensive position in judicial controversies, it no less stringently demands the same from the litigant parties who come before it as plaintiffs or actors in such controversies." I Pomeroy's Eq. Juris., (4th Ed.), sec. 98. A plaintiff has no standing in equity if his conduct with reference to the matter in controversy has been inequitable, unfair, unjust or marked by bad faith or unconscientious dealing. The Means Company prepared the contract itself, presented it to its employee, appellant, for signature and obtained his signature thereto under representations that it was a matter of form and policy of the company. The contract provided for the same basis of pay as appellant was then receiving and had been receiving from both the Means Company and its predecessor. Then, less than three and one-half months after the execution of the contract, the employment was suddenly terminated by the company, without notice, and without excuse or attempted justification for its action other than that the appellant was receiving too much pay for his services. There was no effort to retain his services for less pay. The mere statement of

these propositions portrays their inequity. The appellee succeeds to the said contract subject to the rights, equities and limitations of the parties thereto, and, being burdened with the inequitable conduct of its predecessor, cannot be granted the relief which is sought by the bill. Though a successor to the rights of another may not be directly guilty of inequitable conduct with reference to the matter in suit, he will not be permitted to maintain in equity a position involving inequitable conduct of his predecessor, where no other equities intervene to protect such successors. "The maxim (He who comes into equity must come with clean hands) is also applied not only to the participants in the transaction, but to their heirs, and to all parties claiming under or through either of them." *Rust* v. *Gillespie*, (Okla.) 216 Pac. 480. The same principle is recognized in 10 Ruling Case Law, 353; 1 Story's Eq. Jr. (14th Ed.), sec. 99, and 1 Pomeroy's Eq. Jr., (4th Ed.), sec. 404, and is applied in *McClintock* v. *Loisseau*, 31 W. Va. 865.

We therefore reverse the decree of the circuit court, dissolve the injunction and dismiss the bill.

*Reversed; injunction dissolved; bill dismissed.*