THE O. HOMMEL CO., *Inc.* v. PAUL J. FINK·*et al.*

(Nos. 7083, 7705)

Submitted November 13, 1934.   Decided December 18, 1934.

*McCamic & Clarke, Weil, Christy & Weil, Jay T. Mc-Camic* and *Wesley R. Tinker, Jr.,* for appellant.
*Handlan, Garden & Matthews,* for appellees.

HATCHER, JUDGE:

·This suit involves a contractural covenant restricting an employee from engaging in business similar to that of the employer within a designated time and territory after the employment should cease.

The plaintiff, as employer, seeks herein to enforce the covenant against the defendants, its former employees. A temporary injunction. herein was dissolved before the cause was fully matured.   An appeal, No. 7083, followed the dissolution.   The suit then progressed to final hearing in the circuit court, and the bill was dismissed.   Another appeal, No. 7705, followed the dismissal.   The two appeals are now heard together.

The plaintiff is a Pennsylvania corporation, and imports, manufactures and sells bronze powders, china and glass colors (known as ceramic colors), ceramic chemicals and supplies (gold, silver and platinum preparations) for decorating ceramic wares, such as dinnerware, floor and wall tile, art pottery, bricks and terra cotta. Plaintiff has only five competitors in the United States. It and its predecessors have been in this business for many years, during which time it has dealt with several thousand customers in the United States. Such dealings were for the most part regarded by plaintiff as confidential. It now does a gross business of from $800,000 to $1,000,000 annually. Matching or producing the color desired by the customer is sometimes a very difficult matter. To facilitate its business in this respect, it has gathered valuable data on clays (over one thousand of them alone) and on where, throughout the world, the rarer colors may be procured. It also maintains a chemical laboratory with a force of eight to ten skilled chemists, for the purpose of experimenting in the production and matching of colors. Those experiments number many thousand, and have consumed from a few hours to as long as fifteen years, in one instance. In another case, three thousand experiments failed to duplicate a color. Plaintiff makes contacts with its customers mainly through its salesmen. They are continuously schooled and instructed in the chemical composition and the chemical effects of the ingredients entering into the various color groups which might interest the customer. They are expected to secure from him in connection with a sample of the color desired, his manufacturing processes, which the plaintiff must know, in order to produce the particular color. Salesmen are occasionally admitted into the laboratory during the experiments. The information imparted to the salesman by plaintiff, the information obtained by them from the customers, and the formulas worked out by plaintiff in its laboratory are all regarded by it as confidential. Its business is confined mainly to two provinces in Canada and to the following states: Massachusetts, Rhode Island, Connecticut, New

York, New Jersey, Pennsylvania, Maryland, West Virginia, Ohio, Indiana, Illinois, Missouri, Kentucky, Tennessee, Michigan, Wisconsin and Minnesota.

Upon entering the employment of plaintiff, each defendant signed a contract, agreeing that in consideration of the employment, he would not divulge during the term of his employment or afterwards, "any trade secrets, formulas, receipts or processes", learned in connection with the business, and would not for a period of three years after the employment terminated, engage directly or indirectly in business similar to that of plaintiff, within Canada or that portion of the United States east of the Mississippi River. Neither of defendants had engaged in this business before. One had been a school teacher and the other a salesman of embalmers' supplies. One worked for plaintiff about one year, and the other about two years. Fink served as a salesman a while and then finished his term in the main office. He was discharged, after two weeks notice, as required by his contract. Cunningham worked as a salesman his entire term. He resigned. Within a few days after their relations with plaintiff ended, they opened up in Wheeling, West Virginia, a business which their answer admits was similar to that of plaintiff's. The answer further admits that defendants are conducting their business in the identical states in which plaintiff does business; that while they were working for plaintiff, they gained acquaintance and knowledge of such patrons and customers of plaintiff, as they were directed to see; that they are personally and by mail endeavoring to make sales of colors and ceramic materials to former patrons and customers of plaintiff throughout the United States. The answer would excuse defendants on the ground that there are certain publications from which general information is obtainable concerning the materials and colors employed by plaintiff and concerning the purchasers of ceramic supplies, etc. Since no evidence supports the answer and the allegation is met by a general replication (to the answer), we cannot even consider the allegation.

Plaintiff proved without denial that an indefinite num-

ber of laboratory reports on colors desired by customers passed through the hands of the defendants, and that Fink said to another employee of plaintiff about two months before his employment ceased (in the language of the witness) "that he would be terminating his position with the O. Hommel Co. in a week or so, and that he had not been working for nothing for them, and that he had his eyes open, and picked up a small black notebook, and said he had information that would help him later on."

This suit is different from many cited cases in that it does not disclose unfair conduct of the employer; and it does not involve a trade or profession, upon the practice of which depends the livelihood of the defendants. Neither is it a case in which the imposition of the covenant would deprive defendants of engaging in a business they had learned before their relationship with plaintiff. As far as the record competently shows, it is a case in which they acquired from plaintiff, solely, all of the business information they are now employing. It may be, as the defendants contend, that many of the details of the business, including even some of plaintiff's so-called trade secrets, could have been procured elsewhere. It may be that plaintiff's standard of confidence is unnecessarily severe. The contract of employment warned defendants, in advance, of information to be acquired which the plaintiff would regard as confidential. They agreed to restrictions on such information. We are therefore not concerned with nice distinctions of what are properly trade secrets. For the purposes of this suit, we shall accept plaintiff's undisputed estimate, in the main, as to what information was confidential. Defendants now are using a part, at least, of that information to the detriment of plaintiff.

It is settled law that a restrictive covenant such as the one in question will be enforced if the restriction is reasonably necessary for the protection of the employer and does not impose undue hardship on the employee. Restatement, Contracts, sec. 516 (f). The comment on this section (p. 1001) specifically contemplates enforcement

of the employee's promise when necessary to prevent his use of the employer's trade secrets and list of consumers —the very prevention sought here. Accord: 32 C. J., Injunctions, sec. 340; Annotation, 9 A. L. R. 1467; Pomeroy, Eq. Juris. (4th Ed.), sec. 934; Page on Contracts, Sec. 780; *Towel Co.* v. *Reynolds,* 108 W. Va. 615, 616-7, 152 S. E. 200. The facts proven and admitted—too plain to call for repetition—require that the covenant be enforced.

It is contended that the territorial restriction in the contract is too great. Consideration of this contention is not necessary. The interests of the plaintiff will be sufficiently protected by enforcing the covenant merely as to the two Canadian provinces and the states east of the Mississippi in which it actually does business. Such modification is permissible. *Trans. Co.* v. *Pipe Line Co.,* 22 W. Va. 600, 622.

The decrees of the circuit court are accordingly reversed; and the preliminary injunction, modified as above indicated, will be continued in full force during the three-year restrictive period.

*Reversed and entered.*