PANCAKE REALTY COMPANY

*v.*

OVERTON C. HARBER

(CC 792)

Submitted September 17, 1952. Decided December 9, 1952.

606

*George S. Wallace* and *George S. Wallace, Jr.*, for plaintiff.

*Daugherty & Daugherty,* for defendant.

BROWNING, JUDGE:

This suit was instituted in the Circuit Court of Cabell County, by the Pancake Realty Company, praying for an injunction restraining the defendant, Overton C. Harber, from soliciting or selling, for himself or for anyone else, any real estate, mortgage loans, or fire insurance, and from entering the employment of any person or firm engaging in such business within a period of one year.

The bill of complaint alleges: That the plaintiff is a corporation engaged in selling real estate, etc., in the City of Huntington and has built up a clientele of good will in the city of great value; that, on August 3, 1946, the plaintiff and defendant entered into a contract of employment, one of the provisions of which is as follows: "It is further understood and agreed by and between the parties hereto that in the event either party shall elect to exercise their option to terminate this contract, that for the protection of the Pancake Realty Company, and it is so distinctly stated herein, that inasmuch as the said Overton C. Harber shall have access to all files, prospects and property and shall know about all the business in this connection, that the said Overton C. Harber distinctly agrees to and with said Pancake Realty Company that he will not enter the business of selling real estate, mortgage loans, or fire insurance, nor will he enter the

employ of any other person, persons, firm or corporation, selling real estate, mortgage loans or fire insurance, or any other business similar to that of the Pancake Realty Company for a period of one (1) year from the time the said Overton C. Harber shall have terminated his contract with the Pancake Realty Company, either by giving notice to the Pancake Realty Company or by the Pancake Realty Company giving notice to him, that he will not sell, for himself, or anyone else, be it individual, firm or corporation, directly or indirectly, any real estate, mortgage loans, or fire insurance, and will not enter the employ of any such person, firm or corporation engaging in such business within the said period of one (1) year."

The bill further alleges that the employment contract was terminated by the defendant by giving the required thirty days notice on February 1, 1952, and that the defendant, immediately upon severing his relationship with the plaintiff, entered the employ of a firm engaged in selling real estate in the City of Huntington and the surrounding area. The bill also charges that, by reason of defendant's intimate knowledge of plaintiff's business affairs, he has solicited many of plaintiff's customers, reciting a specific instance, and thus engaged in unfair trade practices.

The defendant demurred to the bill of complaint, citing as the specific ground in support therefor, that the restrictive provision in the contract, set out in the bill, contains no territorial limitation, and without such limitation the agreement is void.

The trial court sustained defendant's demurrer, gave plaintiff permission to amend its bill, and on its own motion certified the following questions, in substance, to this Court:

> (1) Since the restrictive provision relating to employment contains no territorial limitation, is the contract absolutely void or can the court shave the territorial limitation down to a point that it will reasonably protect the employer?
>
> (2) Is greater latitude allowed in contracts re-

lating to the sale of a business or the dissolution of a partnership, which contains restrictive covenant as to the seller engaging in business, than in contracts of employment containing restrictive covenants as to an employee engaging in business?

(3) Is there any decision of the Supreme Court of this state in which the court has passed upon the validity of restrictive employment contracts where no territorial limitation appeared in it?

(4) Should a contract growing out of the sale of a business and which contains restrictive covenants as to the seller engaging in business be given a different construction from a contract of employment which contains restrictive provisions as to the employee engaging in business after its termination?

The trial chancellor answered the first and third questions in the negative and the second and fourth questions in the affirmative.

It must be noted in considering these questions that there are two types of restrictive covenants, one applicable to the sale of an established business, and the other to a personal contract of employment. This Court first dealt with this problem in 1883 in *West Virginia Transportation Co.* v. *Ohio River Pipe Line Co., et al.,* 22 W. Va. 600, and the third point of the syllabus is: "As a general rule any trade or business may legally have imposed on it by contract a *partial* restraint, as the extent of territory, over which it is permitted to extend. Such restraint, when valid, varies with the character of the trade or business. In some sorts of trade or business it may be a large extent of country, hundreds of miles in dimensions, in which a party may contract not to carry on his business; but in other sorts of business the restraint would not be valid, if it were attempted by the contract to extend it beyond the bounds of a single town; and there are some sorts of business, which the law will not allow to be restricted at all by contract."

In *Boggs* v. *Friend,* 77 W. Va. 531, 87 S. E. 873, the defendant had agreed verbally that he would not engage

in the blacksmith business "in the vicinity or neighborhood where said blacksmith shop was located, or at any other place so near thereto as to constitute a rival business or detract from the patronage which would naturally or likely go to the shop and business so purchased." The Court upheld that agreement stating that the test in determining the validity or invalidity of such contract was the reasonableness of the restraint imposed, and that such a contract would be enforced as to time and space only to the extent necessary to protect the rights of the parties and the interest of the public.

The last case decided on this subject by this Court was *Axford* v. *Price,* 134 W. Va. 725, 61 S. E. 2d 637, and involved the sale of a meat market in the City of Huntington. The promisor agreed not to compete at any time with the plaintiff in the same business in the same territory in which the plaintiff operated or would operate in a continuation of the business which the promisor had sold. The action of the trial court in granting an injunction was modified because there was no limitation as to time in the contract, and with that modification affirmed the ruling. The *West Virginia Transportation Co.,* the *Boggs* and the *Axford* cases all involve the interpretation of a restrictive covenant between the seller and purchaser of an established shop or business.

There is authority in this State also upon the effect of contractual covenants between an employer and an employee, restricting the employee from engaging in business similar to that of the employer after the employment relationship has ceased. In *Chicago Towel Company* v. *Reynolds,* 108 W. Va. 615, 152 S. E. 200, the restriction imposed upon the employee was for a period of five years "in the City of Huntington or in any other place or territory where he had worked for said company." Although the decision was primarily upon another point, the Court said: "* * * The element of time, the extent of the area, and the conditions of the parties are all to be considered in determining the broader question of the reasonableness of such restrictions, not only as to the immediate

parties but as to the public generally. The standard in all of these cases seems to be reasonableness, and with that in view, each case must stand on its own facts and circumstances."

*Hommel* v. *Fink,* 115 W. Va. 686, 177 S. E. 619, involved an agreement between an employee and his employer to the effect that he would not, for a period of three years after his employment ceased, engage in business similar to that of his employer "within Canada or that portion of the United States east of the Mississippi River." The agreement was approved by this Court, but the territory was reduced to two provinces of Canada and those states east of the Mississippi River in which the employer actually engaged in business.

In *Household Finance Corporation* v. *Sutton, et al.,* 130 W. Va. 277, 43 S. E. 2d 144, the view expressed in *Hommel* v. *Fink, supra,* was approved, the Court holding, in effect, that a restrictive covenant in an employment contract, limited as to time and space, will be enforced if such restriction is reasonably necessary to protect the employer and does not impose undue hardship upon the employee. This Court, and those of other jurisdictions, appear to be in accord that contractual restrictions ancillary to the sale of a business will be approved if reasonable as to time and territory, and if unreasonable will reduce or "shave" the terms of the agreement so that it conforms to what the Court believes upon the facts of the particular case to be reasonable. There is apparently general agreement also as to contractual covenants between employers and employees where the restrictions are reasonable as to time and space, and there is a tendency to shave unreasonable territorial limits of such contracts, where possible, to the proper scope necessary to effect their purposes.

However, we do not find any precedent in this jurisdiction or elsewhere to the effect that a contractual agreement, without territorial limits, between an employer and an employee, is valid, nor any case in which such a

contract has been shaved as to space and approved. Williston on Contracts, Volume 5, Section 1643, says: "Courts are less disposed to sustain an agreement which forms part of a contract of employment to refrain from subsequently engaging in competitive occupation than where a similar agreement is attached to a contract of sale. There is likely to be greater hardship to the promisor and therefore injury to the public, in the former case, as for instance where an employee, expert in a narrow and technical specialty, engages not to practice his specialty. There is a tendency in the United States to follow the English courts in differentiating between contracts in restraint of trade and contracts in restraint of employment. The distinction, however, seems unadvisable as a positive rule of law. If it is rightful to protect a business when it is purchased it should be lawful to protect an established business from injury by an employee, unless circumstances of great hardship exist. The ultimate question should be the same in both cases,—what is necessary for the protection of the promisee's rights and is not injurious to the public. In England a covenant by a confidential employee is generally found reasonable but a covenant by a minor employee is more strictly dealt with."

In 32 C. J., Section 340, it is stated that: "Some decisions have drawn a distinction between contracts of this character [employment] and those elsewhere considered, on the ground that the breach of a like covenant in an employment contract does not so readily indicate irreparable injury to the employer; and the burden is placed by these decisions on complainant to show affirmatively that he had sustained, or was likely to sustain, irreparable damage. In any event it is only where the restriction is not more extensive as to time or place than is necessary to protect the employer's business that an injunction will be allowed to prevent a breach of the restriction. If unlimited as to either time or territory, it is necessarily void as being unreasonable. * * *," and cites in support thereof *Kaumagraph Co.* v. *Stampagraph Co.*, 197 App. Div. 66, 188 N. Y. S. 678, and *Shirk* v. *Loftis*, 148 Ga. 500, 97 S. E. 66.

In *Wisconsin Ice & Coal Co.* v. *Lueth*, 213 Wis. 42, 250 N. W. 819, the court, though recognizing the power of the courts to modify a restrictive covenant, unreasonable in its territorial scope, refused to enforce or shave such covenant where the contract furnished no basis for an equitable division of the territory to which the restriction applied, even though, as here, the employer has expressed a willingness to accept a restriction proper in scope.

This tendency to uphold the restrictions in both types of cases, where reasonable and not against public policy, is in sharp contrast to the language used by the Court in the first case dealing with restrictive covenants. *John* v. *Dier,* decided in 1415, Year Book 2, Henry V., 5: "* * * covenants were held to be unenforceable, no matter how limited in time and place. Hull, J., said: 'In my opinion you might have demurred upon him, that the obligation is void, inasmuch as the condition is against the common law; and (per Dieu) if the plaintiff were here he should go to prison till he paid a fine to the King.'"

However, it is the opinion of this Court that a contractual covenant without territorial limitation between an employer and an employee, restraining the employee from engaging in business similar to that of the employer, is void because it is unreasonable and against public policy. Therefore, being void, the Court will not undertake to reduce the territorial limits which otherwise it might do in a case where the territorial limits were stated and were too extensive.

We are in agreement with the trial court in its ruling upon each of the questions certified.

The plaintiff's bill alleges unfair trade practice on the part of the defendant in addition to the violation of the contract. The sufficiency of that allegation we do not pass upon, inasmuch as that question is not implicit in the record and is not decisive of the matter before us. Cf. *Walker* v. *City of Morgantown*, 137 W. Va. 289, 71 S. E. 2d 60. We are, therefore, limited solely to consideration of the questions certified by the trial chancellor. "The

statute contemplates an unequivocal original ruling by the trial court in any case certified to this Court and only such questions as have been decided by the trial court and by it certified here may be considered, upon certificate, by this Court." *Weatherford* v. *Arter*, 135 W. Va. 391, 63 S. E. 2d 572.

The ruling of the Circuit Court of Cabell County upon the questions certified is affirmed.

*Ruling affirmed.*