AMERICAN CLAIMS SERVICE, LTD., Plaintiff-Appellant, v. PAUL G. BORIS *et al.,* Defendants-Appellees.

First District (1st Division)   No. 84—0080

Opinion filed November 4, 1985.

Epton, Mullin & Druth, Ltd., of Chicago (George J. Schaller and Gerald B. Mullin, of counsel), for appellant.

Julius Padegimas, of Chicago, for appellees.

JUSTICE CAMPBELL delivered the opinion of the court:

This appeal arises from an action wherein the plaintiffs, American Claims Service, Ltd. (hereinafter ACS), sought the issuance of a preliminary injunction to enjoin defendants, Paul G. Boris, Brian P. Boris and Paul Alexander & Associates, Inc., from soliciting business from 27 of plaintiff's customers. Defendants, Paul and Brian Boris, were former employees of ACS, and plaintiff contends that any solicitation of its customers violated restrictive covenants in employment agreements that defendants had executed with ACS. After a trial on the merits, the trial court denied the injunctive relief finding that plaintiffs had no protectable interest in its customers. Plaintiff appeals contending that (1) it possesses a protectable business interest in 27 of its customer accounts; and (2) the restrictive covenant in defendant's employment agreement is reasonable in geographic and temporal scope.

Plaintiff, ACS, is a corporation engaged in the business of independent claims adjusting on behalf of insurance companies. The founder and president of ACS, Ferdinand Ratajack, has been in the independent adjusting business for approximately 37 years.

Defendant, Paul Boris, was employed by ACS from August 1976 until May 1982. He was a key employee, first employed as a multiple lines claims supervisor and later promoted to a claims manager. Prior to his employment with ACS, Paul Boris had been in the insurance adjusting business for approximately 25 years. Defendant, Brian Boris, Paul Boris' son, was also employed by ACS for the period from December 1977 until May 1982. During this period he worked as a field claims adjuster. Before his employment by ACS, Brian Boris had no experience in the insurance industry.

Following their hiring by ACS, both defendants executed an employment agreement containing the restrictive covenant at issue here. This covenant provided:

"(2) (A) for a period of one (1) year from the date of termination of employment with ACS \*\*\*, the employee will not directly or indirectly in any capacity \*\*\* engage in a business or

endeavor that is or may be similar to or may be or become competitive with the business of ACS (said business being investigation and adjusting casualty, fire and other related insurance claims \*\*\*) within an area comprising a thirty mile radius of Chicago, Illinois.

(B) For said one year period following termination of employment with ACS, the employee agrees not to solicit business from any account or customer, nor accept business or assignments from any account or customer which was an account or customer of ACS during employee's employment with ACS, or during said one year, not to solicit any investigation or adjusting claims work, any account or customer, where such claims investigation or adjusting work is to be done within a thirty mile radius of Chicago, Illinois.

(C) At the termination of the employment with ACS of the person who has signed below, he or she will not hire or attempt to hire for employment in any business venture, any person who was an employee of ACS.''

In May 1982, after leaving ACS' employ, defendant Paul Boris formed Paul Alexander & Associates (hereinafter Alexander), a business engaged in the independent adjustment of insurance claims. Brian Boris joined him in the business. Plaintiff argues that activities undertaken by defendants through Alexander violated the restrictive covenants contained in defendants' employment agreements. These acts included the sending of approximately 85 letters of solicitation by defendant Paul Boris to certain clients of ACS. Defendants also employed a former employee of ACS at Alexander.

Plaintiff sued for injunctive relief to enforce the restrictive covenants in the employment agreement and to prevent defendants from performing work for 27 of the accounts defendant serviced while in the employ of ACS. The injunction sought would remain in effect for a one-year period. Plaintiff argues that but for the defendants' contact with the 27 customer accounts while at ACS, they would have no knowledge of these customers.

■ Whether a restrictive covenant is enforceable is a question of law. (*Barrington Trucking Co. v. Casey* (1969), 117 Ill. App. 2d 151, 253 N.E.2d 36.) There are two general situations in which an employer's interest in its customers is legally protectable through the enforcement of a restrictive covenant. First, an employer's interest in its customers will be deemed proprietary if, by the nature of the business, the customer relation is near-permanent and but for his prior employment, the defendant would not have had contact with the cli-

ents in question. Second, a covenant not to compete will be enforced where the employee acquired confidential information and subsequently attempted to use it for his own benefit. (*Morrison Metalwald Process Corp. v. Valent* (1981), 97 Ill. App. 3d 373, 422 N.E.2d 1034; *Hydroaire, Inc. v. Sager* (1981), 98 Ill. App. 3d 758, 424 N.E.2d 719; *Nationwide Advertising Service, Inc. v. Kolar* (1975), 28 Ill. App. 3d 671, 329 N.E.2d 300.) Conversely, a protectable interest in customers is not recognized where the customer list is not secret (*House of Vision, Inc. v. Hiyane* (1967), 37 Ill. 2d 32, 225 N.E.2d 21), or where the customer relationship is short-term and no specialized knowledge or trade secrets are involved. (*United Travel Service, Inc. v. Weber* (1969), 108 Ill. App. 2d 353, 247 N.E.2d 801.) Under these circumstances, the restrictive covenant is deemed an attempt to prevent competition *per se* and will not be enforced. (*TAD, Inc. v. Siebert* (1978), 63 Ill. App. 3d 1001, 380 N.E.2d 963.) Covenants not to compete are carefully scrutinized by the courts since, at least to some extent, they can result in restraints of trade. See *Wessel Co. v. Busa* (1975), 28 Ill. App. 3d 686, 329 N.E.2d 414.

From these principles, it follows that our initial inquiry is whether plaintiff has proven the existence of a protectable business interest or property right which justifies the enforcement of the restrictive covenant.

■ The evidence presented at trial revealed that plaintiff's customers utilized various independent adjusting agencies located throughout the area depending upon the nature, size and location of the claim. It appears that the insurance adjusting business is a highly competitive industry. The names of potential clients were available through the Chicago Yellow Pages as well as through widely distributed publications. Defendants testified that they did not actively solicit plaintiff's customers, but merely relied upon the available publications as sources for their clients. We believe the evidence was insufficient to establish that but for his employment with the plaintiff, defendants would not have had contact with the 27 clients at issue. Defendant, Paul Boris, had approximately 25 years of experience in the field of insurance adjusting and had previously dealt with several of the 27 clients prior to his employment with ACS. In our opinion, plaintiff has failed to establish that they had an exclusive or near-permanent relationship with its customers. *Morrison Metalwald Process Corp. v. Valent* (1981), 97 Ill. App. 3d 373, 422 N.E.2d 1034; *Nationwide Advertising Service, Inc. v. Kolar* (1975), 28 Ill. App. 3d 671, 329 N.E.2d 300.

Further, from our review of the evidence presented, plaintiff

failed to establish the element of confidentiality of the customer information. No trademarks or trade secrets were involved. Mr. Ratajack, president of ACS, testified that there was nothing "secret" about the names of his clients and that all his employees knew his clients. Plaintiff made no attempt to keep this information confidential. (See *Lincoln Towers Insurance Agency v. Farrell* (1981), 99 Ill. App. 3d 353, 425 N.E.2d 1034.) Ratajack further testified that defendants took no documentation with them upon termination of their employment with ACS and that no customer lists were missing following the defendants' departure.

We conclude, therefore, that the manifest weight of the evidence adduced at trial does not contradict the trial court's finding that the customer information was not a protectable business interest.

Since we find that plaintiff failed to establish a protectable business interest sufficient to trigger enforcement of the restrictive covenant, we need not consider plaintiff's remaining contention concerning the scope of the restrictive covenant.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

BUCKLEY, P.J., and O'CONNOR, J., concur.