359 S.E.2d 614

**APPALACHIAN LABORATORIES, INC.**

v.

**Steven W. BOSTIC.**

No. 17203.

Supreme Court of Appeals of
West Virginia.

Decided July 22, 1987.

Dissenting Opinion July 28, 1987.

W.A. Thornhill, III, Thornhill, Kennedy & Vaughan, Beckley, for appellant.

Anthony R. Veneri, Randall L. Veneri, Princeton, for appellee.

PER CURIAM:

This suit for injunctive relief was brought by Appalachian Laboratories, Inc. (Appalachian), against its former employee, Steven W. Bostic, to enforce the provisions of a restrictive covenant in his employment contract. On May 22, 1986, the Circuit Court of Raleigh County issued an order permanently enjoining Mr. Bostic from engaging in the water analysis business or from soliciting customers of Appalachian, as provided in the covenant. We conclude that Appalachian had no business interest susceptible of protection by a restrictive covenant, and reverse the judgment of the circuit court.

Mr. Bostic received training as a water analyst while employed by Sterling Smokeless Coal Company for approximately five years beginning in 1977. In 1981, he began a sole proprietorship in Raleigh County which specialized in the chemical analysis of water samples. He operated his business for less than one year, during which time he developed a small core of six to eight regular customers. In 1982, Mr. Bostic agreed to sell to Appalachian his business assets, consisting primarily of laboratory equipment, and to begin work for Appalachian as a water analyst.[1] Appalachian is a West Virginia corporation which

---

1. No bill of sale for the business appears in the record. Testimony adduced at the hearings below revealed that the total consideration for the sale of equipment was $5,000. It appears that

Appalachian paid an outstanding debt owed by Mr. Bostic in the amount of $3,000, and that the balance of the consideration was paid in cash in monthly installments.

performs water analysis services, primarily for coal companies and highway contractors in the southern counties of West Virginia.

A written employment contract, dated August 12, 1982, was signed by Mr. Bostic and Harold Snodgrass, as president of Appalachian. This contract contained a covenant which provided that, upon termination of his employment with Appalachian, Mr. Bostic would not engage in a similar business for a period of five years within any of ten specified counties or any other county in which Appalachian was doing business.[2]

On January 6, 1986, Mr. Bostic ended his employment with Appalachian, apparently in violation of the notice requirements in his contract.[3] Mr. Bostic was then employed by West Virginia Laboratories, Inc., a corporation chartered by his wife in December, 1985. This company performs the same kind of water analysis as Appalachian, though plans are under consideration to expand into coal and sewage analysis as well.

In January, 1986, Appalachian brought suit in the Circuit Court of Raleigh County seeking to enjoin Mr. Bostic from engaging in business in violation of the covenant and from actively soliciting Appalachian customers. A hearing was held on January 27, 1986, during which Mr. Bostic was called as an adverse witness on behalf of Appalachian. He testified that after he had terminated his employment with Appalachian, he worked for West Virginia Laboratories without pay, but did not perform any water analysis. He stated that during January, 1986, he had solicited approximately sixty Appalachian customers by the mails, by telephone, and in person. According to his testimony, all but two of the present customers of West Virginia Laboratories were former customers of Appalachian. After the hearing, the court granted a preliminary injunction.

At a second hearing on May 22, 1986, Mr. Bostic called Mr. Snodgrass as a witness on his behalf. Mr. Snodgrass testified that Appalachian has no patents or copyrights; that it had not provided Mr. Bostic with any specialized schooling or training; and that the analysis procedures utilized by Appalachian are the standard procedures utilized throughout the industry. Appalachian's clientele consists primarily of coal companies and State contractors. Mr. Snodgrass testified that companies carrying on mining operations in the State are required to obtain permits through the Department of Energy (DOE), and conceded

2. The restrictive covenant, in its entirety, reads as follows:

"Upon the termination of his employment, whether by termination of this Agreement, by wrongful discharge, or otherwise, Employee shall not directly or indirectly, enter into or engage in any other business similar to that carried on by Employer either as an individual for his own account, or as a partner or joint venturer, or as an employee, agent, or salesman for any person or corporation, or as an officer, director, or shareholder of a corporation, or otherwise, for a period of five (5) years after the date of termination of his employment hereunder. Solicitation or acceptance of orders or services in a like or similar nature to those contained herein outside the restrictive territories hereinafter mentioned for work to be performed in any of the restrictive territories shall constitute 'engaging in business' in the restrictive territories in violation of this Agreement. This covenant on the part of Employee shall be construed as an Agreement independent of any other provision of this Agreement; and the existence of any claim or cause of action of Employee against the corporation, whether predicated on this Agreement or otherwise, shall not constitute a defense to the enforcement by the corporation of this covenant.

"The restrictive territories hereinabove mentioned include but are not limited to the following: Raleigh County, Wyoming County, McDowell County, Fayette County, Kanawha County, Randolph County, Summers County, Mercer County, Greenbrier County, and Nicholas County, all in West Virginia, and will also include any and all other counties in the State of West Virginia, or any other state, in which Employer is actively engaged in business at the time of termination of this Agreement."

3. Article V of the employment contract provides, in part: "In the event ... that one party would wish to terminate this Agreement, then it is agreed that said termination will be effective upon written notice given not less than two (2) months prior to the date said Agreement would lapse...." Appalachian did not seek damages for breach of this contract provision in its complaint.

that the names and addresses of all permit holders are available at regional DOE offices. Similarly, all contractors performing highway construction for the State are subject to public disclosure through the appropriate State authority. After this supplemental hearing, the trial court issued an order making permanent the injunction previously granted.

This Court has long acknowledged the validity of a covenant in an employment contract which reasonably restricts the right of an employee to compete with his employer, after termination, within specified temporal and territorial limits. As we held in the Syllabus of *O. Hommel Co. v. Fink*, 115 W.Va. 686, 177 S.E. 619 (1934):

"A contractual covenant between employer and employee, restricting the employee from engaging in business similar to that of the employer within a designated time and territory after the employment should cease, will be enforced if the restriction is reasonably necessary for the protection of the employer and does not impose undue hardship on the employee."

*See also Household Fin. Corp. v. Sutton*, 130 W.Va. 277, 43 S.E.2d 144 (1947); *Pancake Realty Co. v. Harber*, 137 W.Va. 605, 73 S.E.2d 438 (1952).

Our more recent cases recognize that to obtain enforcement of a covenant not to compete, the employer must demonstrate that he has a protectible business interest. *Helms Boys, Inc. v. Brady*, 171 W.Va. 66, 297 S.E.2d 840 (1982); *Reddy v. Community Health Found. of Man*, 171 W.Va. 368, 298 S.E.2d 906 (1982). In *Helms Boys*, a retail appliance company sought to enjoin one of its store managers from engaging in a similar business, pursuant to a restrictive covenant in his contract. We examined in detail the interest which Helms Boys sought to protect, and directed our inquiry to whether "the interest [was] of a unique or confidential nature, such as a trade secret or customer list." 171 W.Va. at 68, 297 S.E.2d at 842. We concluded that the management skills its employee had acquired during his employment with Helms Boys were not unique or confidential, and

declined to enforce the covenant. We held in the single Syllabus:

"When the skills and information acquired by a former employee are of a general managerial nature, such as supervisory, merchandising, purchasing and advertising skills and information, a restrictive covenant in an employment contract will not be enforced because such skills and information are not protectible employer interests."

We believe that here, as in *Helms Boys*, the employer has not demonstrated any legitimate business interest worthy of protection by a restrictive covenant. Mr. Bostic, in his capacity as an analyst, was not privy to any sensitive or confidential information, the appropriation or disclosure of which would result in injury to the employer. Appalachian does not utilize any analysis procedures or techniques which are unique or unusual. Even Mr. Snodgrass admitted during his examination that water analysis of the type performed by Mr. Bostic is "pretty much a standard field."

Moreover, Appalachian has not proved any protectible interest in its list of customers. It is generally held by most jurisdictions that a customer list is not subject to protection by a restrictive covenant where it is readily available to employees or ascertainable by independent sources. *E.g., Calhoun v. Brendle, Inc.*, 502 So.2d 689 (Ala.1986); *Holiday Food Co., Inc. v. Munroe*, 37 Conn.Supp. 546, 426 A.2d 814 (1981); *American Claims Serv., Ltd. v. Boris*, 137 Ill.App.3d 948, 92 Ill.Dec. 723, 485 N.E.2d 534 (1985); *Lincoln Towers Ins. Agency v. Farrell*, 99 Ill.App.3d 853, 54 Ill.Dec. 817, 425 N.E.2d 1034 (1981); *Altana, Inc. v. Schansinger*, 111 A.D.2d 199, 489 N.Y.S.2d 84 (1985); *Catalogue Serv. of Westchester, Inc. v. Henry*, 107 A.D.2d 783, 484 N.Y.S.2d 615 (1985). Here, Appalachian drew from a relatively small and easily identifiable pool of potential customers. The names and addresses of all coal operators and State contractors engaging in activities in the southern region of the State were public information, open and accessible to all. It cannot be said that, but for his employment at Appalachian, Mr. Bostic would have been unable to contact

the customers with whom he has thus far dealt.

We accordingly hold that Appalachian had no protectible employer interest, and that the restrictive covenant is therefore unenforceable. The judgment of the Circuit Court of Raleigh County is reversed.

Reversed.

NEELY, Justice, dissenting:

In *Reddy v. Community Health Foundation of Man*, 171 W.Va. 368, 298 S.E.2d 906 (1982), we held that the common law rule that a covenant not to compete operates as a restraint on trade and is therefore void and unenforceable, had been replaced by the modern rule that an anti-competitive covenant will be upheld if it is supported by consideration, ancillary to a lawful contract, and both reasonable and consistent with the public interest. We also noted that even though a restrictive covenant benefits the employer only, if the covenant is part of a contract that contains mutual promises, there is adequate consideration for the covenant. 171 W.Va. at 372, 298 S.E.2d at 910.

The present facts adhere to these rules of law as Mr. Bostic's restrictive covenant is part of a written employee contract, containing both his signature and the signature of his employer, Mr. Snodgrass. Mr. Bostic agreed not to engage in a similar business for a period of five years within any of the ten specified counties in which Appalachian was doing business. The majority asserts that this restriction was unreasonable because Mr. Bostic was not privy to any sensitive or confidential information, the appropriation or disclosure of which would result in injury to the employer. I believe this misconstrues the rule of reasonableness we painstakingly set out in *Reddy* and therefore I dissent.

We have expressly adopted the Rule of Reasonableness as a governing principle to determine if a restrictive covenant is enforceable, *Pancake Realty v. Harber*, 137 W.Va. 605, 73 S.E.2d 438 (1952); *O. Hom-*

*mel Co. v. Fink*, 115 W.Va. 668, 177 S.E. 619 (1934) and used this as our measuring yardstick to uphold the doctor's restrictive covenant not to practice medicine within a thirty mile radius of a community clinic for three years in *Reddy supra*. The three-dimensional method of inquiry to determine if a restrictive covenant is reasonable is the following: "A restraint is reasonable only if it (1) is no greater than is required for the protection of the employer, (2) does not impose undue hardship on the employee, and (3) is not injurious to the public." *Reddy*, 171 W.Va. at 374, 298 S.E.2d at 911.[1]

The majority asserts that the employer has not demonstrated any legitimate business interest worthy of protection by restrictive covenant because Mr. Bostic was not privy to any confidential information or trade secrets and Appalachian has not proved any protectible interest in its list of customers. However, Mr. Bostic's skills are not merely "managerial" as in the precedent of *Helms Boys, Inc. v. Brady*, 171 W.Va. 66, 297 S.E.2d 840 (1982), which the majority finds controlling. Mr. Bostic specializes in chemical analysis of water samples, which is the core of Appalachian's business and not merely a replaceable administrative talent. This is a legitimate business interest and one Appalachian found valuable as evidenced by their purchase of Mr. Bostic's sole proprietorship in 1982.

The factual setting of the case before us is directly on point with the doctor's employment in *Reddy*. In *Reddy* the hospital urged that the investment in supporting equipment and staff cannot be made economically if doctors can freely leave once their position with patients is secure. *Reddy*, 171 W.Va. at 382, 298 S.E.2d at 920. We agreed and held that the doctor's restrictive covenant not to practice medicine within thirty miles for three years did not place undue hardship on his livelihood. Likewise, Appalachian cannot afford to have Mr. Bostic come along, gain the confi-

---

**1.** *See Solari Indus. Inc. v. Malady*, 55 N.J. 571, 585, 264 A.2d 53, 61 (1970); *accord Ins. Center, Inc. v. Taylor*, 94 Idaho 896, 499 P.2d 1252 (1972); *Wood v. May*, 73 Wash.2d 307, 438 P.2d 587 (1968). *See also* J. Grody, "Partial Enforcement of Post-Employment Restrictive Covenants," 15 Colum. J.L. & Soc. Probs. 181 (1979).

dence of all their customers and then set up a competitive business which takes away Appalachian's livelihood by taking their former customers.

Accordingly, Appalachian did have a legitimate business interest to protect and their restrictive covenant in Mr. Bostic's covenant was reasonable on its face and in light of public policy. Because the majority today directly contravenes our holding in *Reddy v. Community Health Foundation of Man,* I dissent.

I am authorized to state that BROTHERTON, J., joins in this dissent.