WILLIAMS AND MONTGOMERY, LTD., Petitioner-Appellant, v. DONALD E. STELLATO et al., Respondents-Appellees.

First District (2nd Division)   No. 1—89—2069

Opinion filed March 13, 1990.

Williams & Montgomery, Ltd., and Foran, Wiss & Schultz, both of Chicago (Barry L. Kroll, James K. Horstman, Thomas A. Foran, and James R. Figliulo, of counsel), for appellant.

David A. Novoselsky & Associates, of Chicago (David A. Novoselsky and Linda A. Bryceland, of counsel), for appellees.

PRESIDING JUSTICE DiVITO delivered the opinion of the court:

Petitioner-appellant Williams & Montgomery, Ltd. (Williams & Montgomery), a Chicago-based law firm, filed suit against Donald E. Stellato and Richard W. Schumacher, two former nonequity partners of the firm, seeking to enjoin them from soliciting clients of the firm

pursuant to written noncompetition agreements. Williams & Montgomery petitioned for a temporary restraining order and a preliminary injunction. Following a hearing, the petition was denied. Williams & Montgomery now appeals pursuant to Supreme Court Rule 307 (a)(1) (107 Ill. 2d R. 307 (a)(1)) from the interlocutory order denying the petition.

The issues raised are (1) whether the trial court applied the proper standard in denying the petition for a preliminary injunction; (2) whether Williams & Montgomery lacks standing to assert any rights under the noncompetition agreements because it is a corporate entity distinct from Jacobs, Williams & Montgomery, Ltd., the party to the agreements; (3) whether Williams & Montgomery either waived its rights under the noncompetition agreements, or is equitably estopped to assert any rights under the agreements, because it failed to assert its rights under similar agreements with other departed lawyers; (4) whether the trial court properly found that Williams & Montgomery did not have a "protectable interest" in maintaining its client relationships; and (5) whether enforcement of the noncompetition agreements would be contrary to public policy. We affirm. We do not decide whether the noncompetition agreements are unenforceable on public policy grounds. We hold instead that, on the record in this case, there is no basis for disturbing the trial court's finding that Williams & Montgomery did not have a protectable interest in maintaining its client relationships.

The facts of this case are largely undisputed. Williams & Montgomery was incorporated under its current name in 1985 and has been involved primarily in insurance defense litigation. Lloyd Williams and C. Barry Montgomery are currently the sole equity partners of the firm. Prior to 1985, Lloyd Williams and C. Barry Montgomery were partners with Wyatt Jacobs in Jacobs, Williams & Montgomery, Ltd., a law firm which originated as a partnership in 1967 and was incorporated in 1971.

Donald E. Stellato and Richard W. Schumacher are former nonequity partners of Williams & Montgomery. Stellato joined Jacobs, Williams & Montgomery, Ltd., in 1971, became a nonequity partner in 1980, and signed a noncompetition agreement in 1982. Schumacher joined Jacobs, Williams & Montgomery, Ltd., in 1978 and became a nonequity partner in 1985, at which time he signed a noncompetition agreement. On the morning of June 30, 1989, both Stellato and Schumacher resigned from Williams & Montgomery.

Stellato's noncompetition agreement provided as follows:

"The undersigned recognizes and acknowledges that as a pro-

fessional employee of Jacobs, Williams and Montgomery, Ltd. (the firm), (s)he will become acquainted with clients of the firm and will establish working relationships with representatives of the firm's clients. (S)he further acknowledges that, in the promotional efforts of the firm to establish and improve relationships with clients, the firm will expend time, effort and financial resources to develop and enhance the personal and professional reputation of the undersigned as an attorney who is practicing with and for the firm. In contemplation of the foregoing and in consideration of continued employment with the firm and other good and sufficient consideration, the undersigned hereby agrees with the firm that in the event of a severance or termination (for any reason or regardless by which party such severance or termination is initiated) of the employment relationship between the undersigned and the firm, the undersigned will not, for a period of two years and within the Counties of Cook, Lake, DuPage, Will and McHenry of the State of Illinois, seek, solicit or undertake to represent any client of the firm (as hereinafter defined)."

The agreement defined a "client" as "any person, corporation or partnership, association or joint venture and/or the insurer of any one of them, who has had a legal matter pending as an open file with Jacobs, Williams and Montgomery, Ltd., at any time during the next two years preceding termination of employment."

Schumacher's agreement was identical except that Schumacher agreed not to "seek or undertake to represent" any client of the firm. Each agreement excluded clients listed on an attached appendix, but no such appendix or list of excluded clients was ever attached to the agreements.

On June 30, 1989, following the resignations of Stellato and Schumacher, Williams & Montgomery filed a petition in the circuit court of Cook County for a temporary restraining order and a preliminary injunction, seeking to enjoin Stellato and Schumacher from contacting any clients of the firm. On that date, an agreed order was entered prohibiting Stellato and Schumacher from contacting any client of Williams & Montgomery pending the evidentiary hearing scheduled for June 5, 1989.

The evidentiary hearing consisted of about 10 hours of testimony spread out between June 5, 1989, and June 13, 1989. The trial court's restraining order was continued on a day-to-day basis during that time. Lloyd Williams and C. Barry Montgomery each testified that after Stellato and Schumacher signed the noncompetition agreements,

they were given "bigger and better" cases to work on, client relations assignments, and a steadily increasing salary. They also testified that after signing the agreements, Stellato and Schumacher were given access to files containing "confidential client information" and to additional confidential information not contained in any files. They testified that the client information files contained highly valuable information the exposure of which would injure the firm vis-a-vis its competitors.

The files were not made part of the record on this appeal. The record shows only that the files were examined by the trial court, described the clients' businesses and "philosophies," the types of services the clients desired, their filehandling, reporting, and billing practices, and their history with the law firm.

Lloyd Williams and C. Barry Montgomery testified further that, among his other assignments, Stellato was given significant responsibility for matters involving Allstate Insurance Company, a client of the firm since 1971; Chicago Motor Club, also a client since 1971; the Auto Club of Michigan, a client since the early 1970's; and Cover X, a client of the firm for several years. Stellato did not bring any of these clients to the firm and, according to Lloyd Williams and C. Barry Montgomery, had access to information regarding them which he would not have had if he had not signed the noncompetition agreement.

The record shows that in January 1989, Stellato sent Lloyd Williams a memorandum urging Williams to assign all Chicago Motor Club files to him and, in April 1989, prepared a list of all such files and a memorandum completing the transfer of the files to his office. On June 30, 1989, before the effective date of Stellato's resignation, Stellato made appointments to meet with people from Chicago Motor Club, Cover X, and the Auto Club of Michigan. The record does not reveal the purpose of those meetings.

Schumacher was given significant responsibility for matters involving, among others, Rockford Mutual Insurance, a client of the firm since the early 1970's; American States Insurance, also a client since the early 1970's; Watkins Associated Industries, a recent client; and Mi-Jack Products, Inc., another recent client. Schumacher did not bring the Rockford, American States, or Mi-Jack business to the firm, but did obtain business from Watkins through a referral from an attorney he had worked with previously. According to Lloyd Williams and C. Barry Montgomery, Schumacher was given access to confidential information about these clients only after he signed the noncompetition agreement. The record shows that on June 30, 1989, after

Schumacher tendered his resignation, C. Barry Montgomery asked him whether he had contacted any clients of the firm and Schumacher left Montgomery's office refusing to discuss the subject.

Stellato and Schumacher testified that they signed the noncompetition agreements believing that they would be discharged if they did not do so. During late March and April 1989, every partner of the firm was asked to sign a "reaffirmation" of the noncompetition agreement. Stellato, Schumacher, and one other nonequity partner refused to sign. Stellato and Schumacher did, however, orally reaffirm their intention to abide by the earlier agreements.

Stellato and Schumacher also testified that they did not bring any new business to the firm prior to signing the noncompetition agreements. Stellato, however, stated that he believed business from Allstate's Indianapolis region came to the firm through his efforts and business from the Auto Club of Michigan increased because of his client visits. Schumacher stated initially that he believed he brought Mi-Jack to the firm, but recalled that he first met people form Mi-Jack while working on other cases in which the firm represented Mi-Jack.

At the close of the evidence, the trial court denied the petition for a temporary restraining order and a preliminary injunction. The trial court stated:

"I am satisfied that there is no protectable interest. I am satisfied that they have no protectable interest in clients per se; that they do not own clients, nor can they have—nor can they expect to protect the constant—affections isn't the right word, but constant expectation of representation of these clients such that could be protected by the courts. Having found no protectable interest exists, the motion for preliminary injunction restraining the respondents from seeking, soliciting or undertaking to represent clients in accord with the purported agreement is respectfully denied."

The written order denying the petition was entered on July 14, 1989, and Williams & Montgomery filed a timely notice of interlocutory appeal pursuant to Supreme Court Rule 307(a)(1).

I

Williams & Montgomery maintains that the trial court erroneously applied the standard of proof applicable to claims for permanent injunctive relief, not the standard applicable on a petition for preliminary injunctive relief. Williams & Montgomery seeks a remand for reconsideration by the trial court under the correct standard of proof.

■ In order that a preliminary injunction may issue, the peti-

tioner must establish by a preponderance of the evidence that: (1) a certain and clearly ascertained right needs protection; (2) irreparable injury will occur without the injunction; (3) no adequate remedy at law exists; and (4) there is a probability of success on the merits of the case. (*Hydroaire, Inc. v. Sager* (1981), 98 Ill. App. 3d 758, 424 N.E.2d 719.) The petitioner need only raise a "fair question" as to the existence of the right claimed. *A.B. Dick Co. v. American Pro-Tech* (1987), 159 Ill. App. 3d 786, 514 N.E.2d 45.

■ In this case, following the hearing on the petition, the trial court stated: "Having found that no protectable interest exists, the motion for preliminary injunction restraining the respondents from seeking, soliciting or undertaking to represent clients in accord with the purported agreement is respectfully denied." It does not follow, as Williams & Montgomery contends, that the trial court applied the wrong standard in denying the petition. Although the trial court's ruling is consistent with the conclusion that Williams & Montgomery could not succeed on the merits, it is also consistent with the conclusion that Williams & Montgomery failed to prove by a preponderance of the evidence that a "certain and clearly ascertained right needs protection," or that Williams & Montgomery did not raise a "fair question" as to the existence of a right to relief. Thus, the record does not show affirmatively that the trial court applied the wrong standard, and Williams & Montgomery's argument, accordingly, fails.

## II

Respondents maintain that Williams & Montgomery lacks standing to enforce the agreements because it failed to show that it succeeded to the rights of Jacobs, Williams & Montgomery, Ltd., under the agreements. Respondents argue that Williams & Montgomery is a corporation distinct from Jacobs, Williams & Montgomery, Ltd., as evidenced by the clerk of the supreme court's issuance of a new corporate registration number to Williams & Montgomery in 1985. Williams & Montgomery maintains that the issue is not properly before the court and respondents' argument fails, in any event, because Jacobs, Williams & Montgomery, Ltd., simply changed its name in 1985 to Williams & Montgomery, Ltd., following the purchase by the corporation of Jacobs' shares. Williams & Montgomery argues that mere issuance of a new registration number is not evidence that it is a corporate entity distinct from Jacobs, Williams & Montgomery, Ltd.

Respondents also maintain, somewhat confusingly, that Williams & Montgomery has either waived reliance on the noncompetition agreements, or is equitably estopped to seek enforcement of the

agreements, because it failed to enforce similar agreements against other departed lawyers. Respondents rely solely on *Surgidev Corp. v. Eye Technology, Inc.* (D. Minn. 1986), 648 F. Supp. 661, *aff'd* (8th Cir. 1987), 828 F. 2d 452, where the district court stated that it would be inequitable to permit the plaintiff-employer to rely on a covenant not to compete which it had "blithely ignored in the past."

■ Initially, we reject Williams & Montgomery's contention that the standing issue is not properly before this court. Even though under Supreme Court Rule 307(a)(1), the sole issue on this appeal is whether the trial court abused its discretion in denying the petition for injunctive relief, this court may decide the case on any ground having factual support in the record.

■ We do not believe, however, that Williams & Montgomery lacked standing to file the petition. There is no evidence, other than separate registration numbers issued by the clerk of the supreme court, that Jacobs, Williams & Montgomery, Ltd., and Williams & Montgomery were separate corporate entities. To the contrary, the record is replete with evidence that Jacobs, Williams & Montgomery, Ltd., merely changed its name in 1985 to Williams & Montgomery. Lloyd Williams and C. Barry Montgomery both testified that Jacobs, Williams & Montgomery, Ltd., bought the shares owned by Jacobs and then changed its name to Williams & Montgomery without any interruption in the corporation's existence. This testimony was not rebutted by the mere fact that the firm was issued a new certificate of registration following its name change.

■ With respect to respondents' waiver and equitable estoppel arguments, we note that respondents have confused these distinct concepts. A "waiver" is a voluntary relinquishment of a known right, claim, or privilege. (*Vaughn v. Speaker* (1988), 126 Ill. 2d 150, 161, 533 N.E.2d 885.) An "equitable estoppel" requires proof of no less than six elements: (1) words or conduct amounting to a misrepresentation or concealment of material facts on the part of the party allegedly estopped; (2) knowledge by the party allegedly estopped at the time the representations were made that the representations were untrue; (3) lack of knowledge by the party asserting estoppel at the time the representations were made and at the time they were acted upon that the representations were untrue; (4) the party allegedly estopped must intend or reasonably expect the representations to be acted upon; (5) good-faith reliance on the representations by the party asserting estoppel to its detriment; and (6) prejudice to the party asserting estoppel if the party allegedly estopped is permitted to deny the truth of the representations. *Vaughn v. Speaker*, 126 Ill. 2d at 162-63.

■ In this case, there is no evidence in the record that Williams & Montgomery voluntarily relinquished its rights against respondents under the noncompetition agreements. As proof of waiver, respondents rely solely on the assertion that Williams & Montgomery did not seek to enforce noncompetition agreements against other lawyers who left the firm. The record does not show, however, that any other lawyers violated the terms of their noncompetitions agreements.

■ The record is also devoid of evidence that Williams & Montgomery misrepresented or concealed any material facts in connection with the noncompetition agreements, or that respondents relied to their detriment on any representation made by Williams & Montgomery that it would not enforce the agreements. To the contrary, there is evidence suggesting that respondents anticipated enforcement by Williams & Montgomery of its rights under the agreements. Respondents refused to sign a second agreement and admitted that they consulted with an attorney regarding their rights if terminated. These facts belie any contention that respondents relied to their detriment on any misrepresentation made by Williams & Montgomery.

### III

Williams & Montgomery maintains that the trial court erred in finding that it had no "protectable interest" in maintaining its client relationships because the firm had long-standing relationships with its clients, respondents' contacts with the firm's clients were arranged and fostered by the firm, and respondents had access to client information only because they signed the non-competition agreements. We disagree.

■ Noncompetition agreements are carefully scrutinized by the courts because they can result in restraints of trade. (*American Claims Service v. Boris* (1985), 137 Ill. App. 3d 948, 951, 485 N.E.2d 534.) A noncompetition agreement containing reasonable time and territorial restraints will be enforced, where the employee acquires confidential information about the employer's customers which he would not have acquired but for the employment relationship, and subsequently attempts to use it for his own benefit. (See *American Claims Service v. Boris*, 137 Ill. App. 3d at 951, 485 N.E.2d at 536.) The employer is then said to have a "protectable business interest" in its customers. (See *Image Supplies, Inc. v. Hilmert* (1979), 71 Ill. App. 3d 710, 713-14, 390 N.E.2d 68.) The employer may also have a protectable interest in its customers or clients in certain professions in which the employer "could justifiably anticipate a permanent or near-permanent relationship with their clientele." (*Image Supplies,*

*Inc. v. Hilmert,* 71 Ill. App. 3d at 713-14.) For example, courts have found that near-permanent client relationships existed justifying enforcement of noncompetition agreements among doctors (See *Canfield v. Spear* (1969), 44 Ill. 2d 49, 254 N.E.2d 423), and veterinarians (see *Cockerill v. Wilson* (1972), 51 Ill. 2d 179, 281 N.E.2d 648).

In this case, respondents argue that Williams & Montgomery did not have a protectable interest in its clients because the names of the firm's clients were not confidential and other law firms regularly did insurance defense work for Williams & Montgomery's clients. Respondents rely principally on *Image Supplies, Inc. v. Hilmert* (1979), 71 Ill. App. 3d 710, 390 N.E.2d 68, where the court refused to enforce a noncompetition agreement in favor of a firm in the printing business, where client lists were not confidential and the employees did not acquire confidential information while employed. Respondents argue that Williams & Montgomery likewise failed to show that Stellato and Schumacher acquired any confidential information.

■■ With respect to whether Stellato or Schumacher acquired any confidential information, we find respondents' argument persuasive. The names of Williams & Montgomery's clients were published in legal and insurance directories and were known to other law firms. The same clients also retained other law firms in the Chicago area for insurance defense work. Also, the trial court examined the client files and heard all of the evidence regarding their "confidential" nature, including respondents' testimony that the files were "unimportant." The files were not included in the record, so that we would have to speculate regarding their contents before disturbing the trial court's conclusion that the files did not give rise to a protectable interest. This we will not do. Accordingly, we cannot conclude that the trial court abused its discretion in finding no protectable interest based on Williams & Montgomery's failure to prove that respondents acquired any confidential information.

Williams & Montgomery's failure to prove that respondents acquired any confidential information, however, is not dispositive of the question presented in this case. In *Canfield* and *Cockerill,* for example, the courts enforced noncompetition agreements among doctors and veterinarians, respectively, finding "near-permanent relationships" between the employers and their clients. Indeed, the court in *Image Supplies, Inc.* was careful to distinguish the printing business involved in that case from the professions in *Canfield* and *Cockerill.* We must, accordingly, consider whether Williams & Montgomery had "near-permanent relationships" with its clients.

■■ There is uncontroverted evidence that Williams & Montgom-

ery's clients retained other law firms in the Chicago area for insurance work. The trial court itself concluded that Williams & Montgomery could not have "constant expectation of representation of these clients[.]" Based on this record, we cannot conclude that Williams & Montgomery had "near-permanent relationships" with its clients. We do not believe this result is contrary to *Canfield* or *Cockerill*, because common sense suggests that insurance defense firms are more likely to share clients than doctors or veterinarians. Thus, on the record of this case, there is no basis for disturbing the trial court's conclusion that Williams & Montgomery did not have a protectable interest in maintaining its client relationships.

■■■ Finally, we note that there is little support in the record for Williams & Montgomery's contention that respondents actually solicited clients in violation of the agreements. The record shows only that respondents had made certain lunch or golf appointments with employees from Chicago Motor Club, Cover X, and the Auto Club of Michigan. Stellato denied that the purpose of those meetings was to solicit business. He testified that his purpose was merely to inform certain persons that he had left Williams & Montgomery. We do not believe this is sufficient evidence to warrant preliminary injunctive relief. (See *Smith, Waters, Kuehn, Burnett & Hughes, Ltd. v. Burnett* (1989), 192 Ill. App. 3d 693.) The petition for a preliminary injunction was properly denied.

Because of our conclusion above, we do not reach the other issues raised by the parties.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

HARTMAN and BILANDIC, JJ., concur.