[No. B057441. Second Dist., Div. Two. Sept. 27, 1991.]

HAIGHT, BROWN & BONESTEEL, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
WILLIAM B. FITZGERALD et al., Real Parties in Interest.

## COUNSEL

Howarth & Smith, Don Howarth and Barbara Gregg Glenn for Petitioner.

No appearance for Respondent.

Buchalter, Nemer, Fields & Younger, Howard P. Miller, and Wanda R. Dorgan for Real Parties in Interest.

OPINION

FUKUTO, J.—Petitioner, Haight, Brown & Bonesteel (HBB), seeks a writ of mandate after the trial court granted a motion for judgment on the pleadings in favor of real parties in interest (DCC partners).[1]

Haight, Dickson, Brown & Bonesteel was a law partnership with its principal office in Santa Monica, California, and a branch office in Santa Ana, California. In March of 1988, seven of the partners departed the firm, established the law partnership of Dickson, Carlson & Campillo (DCC), and opened an office in Santa Monica, California.

HBB filed a four-count complaint, three counts of which were directed against the DCC partners.[2] In the first count HBB sought, inter alia, a declaration of rights and duties of the DCC and HBB partners under paragraphs (13)(c)(1) and (13)(c)(4) of the 1987 partnership agreement in existence at the time the DCC partners departed the Haight, Dickson, Brown & Bonesteel law firm.

Paragraph (13)(c)(1) provides as follows:

"[E]ach Partner agrees that, if he withdraws or voluntarily retires from the Partnership, he will not engage in any area of the practice of law regularly practiced by the law firm and in so doing represent or become associated with any firm that represents any client represented by this law firm within a twelve (12) month period prior to said person leaving the firm, within the Counties of Los Angeles, Ventura, Orange, Riverside or San Bernardino nor within any City in such Counties for a period of three (3) years from the date of withdrawal or retirement, so long as continuing members of this firm engage in practice in the same areas of law."

Paragraph (13)(c)(4) provides as follows:

"A Partner . . . may violate this Section 13. However, by so doing, he forfeits any and all rights and interests, financial and otherwise, to which he

---

[1] William B. Fitzgerald, Jr., William B. Fitzgerald, Jr., a Professional Corporation, Debra E. Pole, Roxanne M. Wilson, Hall R. Marston, Ralph A. Campillo, Ralph A. Campillo, a Professional Corporation, Jefferey J. Carlson, Robert L. Dickson, Robert L. Dickson, a Professional Corporation, and Dickson, Carlson & Campillo, a Law Partnership.

[2] By stipulation of the parties, the second count for declaratory relief has been dismissed, and the scope of the third count for breach of fiduciary duty has been limited "to losses alleged to be attributable to the lease of office space" on Wilshire Boulevard. The fourth count for "conversion," directed against real party Robert L. Dickson, remains.

would otherwise be thereafter entitled as a departing Partner under the terms of this Agreement."[3]

Also contained within paragraph 13 is the following language: "It is the intent of the Partnership in this Section 13(c) to comply with and take advantage of the provisions of *California Business and Professions Code* [italics in original] Section 16602."

HBB alleged within its operative complaint that "[d]espite the express language of [paragraphs 13(c)(1) and 13(c)(4)] HBB has been advised that the DCC partners do claim an interest in HBB capital accounts and assets and HBB accounts receivable and sought "a judicial declaration that the DCC partners are not entitled to any interest in the capital accounts, assets or accounts receivable of HBB, that [paragraphs 13(c)(1) and 13(c)(4)] are valid, and/or that the DCC partners are estopped to deny the validity of these provisions."

The DCC partners answered and filed a seven-count cross-complaint, seeking, inter alia, a declaration that paragraphs (13)(c)(1) and (13)(c)(4) are "illegal, void and unenforceable," and that "[T]he DCC Partners are entitled to their Partnership [i]nterests in the capital accounts, assets and accounts receivable of HBB pursuant to the 1987 Partnership Agreement."[4]

On the DCC partners' motion, the court granted judgment on the pleadings as to the first count for declaratory relief contained within HBB's operative complaint. The court appears not to have ruled upon the validity of paragraph 13(c)(1), focusing its attention instead on paragraph (13)(c)(4).[5] The court characterized it as a "forfeiture provision," and found it to be "invalid and unenforceable as a matter of law." The court also found as a "matter of

---

[3]A partner who leaves the firm receives his interest in the firm's capital accounts and accounts receivables pursuant to paragraphs 19(j) and 19(k) of the Haight, Dickson, Brown & Bonesteel partnership agreement.

[4]DCC also asserted breach of contract and conversion counts, sought an accounting of the "affairs of Haight, Dickson, Brown & Bonesteel, as of March 15, 1989," and declarations that DCC was "not liable for any debts, obligations or damages arising under, or in connection with, the GTE Building Lease," and that HBB breached the 1987 partnership agreement by failing to make payments to real party Robert L. Dickson as set forth in paragraph 19(b) of the partnership agreement. The seventh count, for "payment of accrued but unused vacation and sabbatical time," was dropped by stipulation of the parties.

[5]The court stated at the hearing on the motion for judgment on the pleading: "I never purported to rule on the enforceability of the language which says that a departing partner will not engage in any area of the practice of law regularly practiced by the law firm and so on. What I'm dealing with is the forfeiture for violating that restriction." The court then stated, "I suppose, in that sense, I'm really ruling on it." However, the court's written order appears to restrict the ruling to the "forfeiture" provision contained within paragraph 13(c)(4) of the partnership agreement.

law that estoppel, waiver, unclean hands or in pari delicto may not be raised as grounds for enforcement of or to prevent challenge to" paragraph 13(c)(4). This petition for writ of mandate followed.

■ A motion for judgment on the pleadings tests whether, as a matter of law, a pleading states facts sufficient to constitute a cause of action. (*La Jolla Village Homeowners' Assn.* v. *Superior Court* (1989) 212 Cal.App.3d 1131, 1141 [261 Cal.Rptr. 146].) On review, the material facts alleged in the operative complaint and facts that may be implied or inferred from those expressly alleged are usually treated as true (*Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566, 572 [108 Cal.Rptr. 480, 510 P.2d 1032]), and we determine whether the trial court erred when it decided the plaintiff failed to state a cause of action as a matter of law. (*Banerian* v. *O'Malley* (1974) 42 Cal.App.3d 604, 611 [116 Cal.Rptr. 919].)

Business and Professions Code section 16602[6] provides that "Any partner may, upon or in anticipation of a dissolution of the partnership, agree that he will not carry on a similar business within a specified county or counties, city or cities, or a part thereof, where the partnership business has been transacted, so long as any other member of the partnership, or any person deriving title to the business or its goodwill from any such other member of the partnership, carries on a like business therein." Originally codified as Civil Code section 1675 in 1872, it has never been amended to prohibit attorneys from availing themselves of the contractual right contained therein.

■■■■■ The DCC partners argue, however, that California has imposed limitations on agreements restricting the right to practice law, by promulgating the Rules of Professional Conduct of the State Bar.[7]

■ Rule 1-500 provides, in pertinent part, that an attorney licensed to practice in California may not "be a party to . . . an agreement . . . if the agreement restricts the right of a member to practice law." (Rules Prof. Conduct, rule 1-500(A).) Such restrictive covenants are not prohibited, however, if the agreement "[i]s a part of [a] . . . partnership agreement among members provided the restrictive agreement does not survive the

---

[6]All further statutory references are to the Business and Professions Code unless otherwise specified.

[7]Although states may not categorically prohibit attorneys from engaging in constitutionally protected activity (See *Shapero* v. *Kentucky Bar Assn.* (1988) 486 U.S. 466 [100 L.Ed.2d 475, 108 S.Ct. 1916]), they may regulate or impose limitations on a constitutional or statutory right by rules of professional conduct. In California, these rules "when approved by the Supreme Court, are binding upon all members of the State Bar." (§ 6077.)

termination of the . . . partnership relationship." (Rules Prof. Conduct, rule 1-500(B)(1).)[8]

 Paragraph 13(c)(1) of the 1987 partnership agreement requires that the withdrawing partners agree not to represent any client previously represented by Haight, Dickson, Brown & Bonesteel within the 12-month period preceding the date of the withdrawal from the partnership. Paragraph 13(c)(4) then provides that if a withdrawing partner represents a client of the former partnership, he or she "forfeits any and all rights and interests, financial and otherwise, to which he [or she] would otherwise be thereafter entitled as a departing partner . . . ." These provisions, read together, do not expressly or completely prohibit the DCC partners from engaging in the practice of law, or from representing any client.

It is argued, however, that the contractual provisions exact a "significant" monetary penalty and thus have the "effect of dissuading departing partners from handling cases for clients in competition with the firm or from practicing law in competition with the firm." The DCC partners conclude, therefore, that the partnership agreement constitutes an impermissible restriction on the practice of law in violation of the public policy embodied within rule 1-500.

 We do not construe rule 1-500 in such a narrow fashion. In our opinion, the rule simply provides that an attorney may not enter into an agreement to refrain altogether from the practice of law. The rule does not, however, prohibit a withdrawing partner from agreeing to compensate his former partners in the event he chooses to represent clients previously represented by the firm from which he has withdrawn. Such a construction represents a balance between competing interests. On the one hand, it enables departing attorneys to withdraw from a partnership and continue to practice law anywhere within the state, and to be able to accept employment should he choose to so do from any client who desires to retain him. On the other hand, the remaining partners remain able to preserve the stability of the

---

[8]Rule 1-500, which became effective on May 27, 1989, is substantially similar to former rule 2-109, which was in effect at the time the DCC partners departed the law firm of Haight, Dickson, Brown & Bonesteel. Rule 2-109 provided:

"(A) A member of the State Bar shall not be a party to or participate in an agreement, whether in connection with the settlement of a lawsuit or otherwise, if the agreement restricts the right of a member of the State Bar to practice law.

"(B) Nothing in subdivision (A) of this rule shall be construed as prohibiting such a restrictive agreement which:

"(1) is a part of an employment or partnership agreement between members of the State Bar provided said restrictive agreement does not survive the term of said partnership or employment; or

"(2) requires payments to a member of the State Bar upon his permanent retirement from the practice of law."

law firm by making available the withdrawing partner's share of capital and accounts receivable to replace the loss of the stream of income from the clients taken by the withdrawing partner to support the partnership's debts.

In our opinion paragraphs 13(c)(1) and 13(c)(4), when read together, are similar to a provision upheld in *Farthing* v. *San Mateo Clinic* (1956) 143 Cal.App.2d 385 [299 P.2d 977] as a liquidated damages clause. The contractual provision at issue in *Farthing* provided that a group of physicians who practiced in partnership at the San Mateo Clinic would not practice in competition with the clinic upon withdrawal from the partnership. The agreement further provided that if any of the withdrawing physicians did compete, they would waive their share of the partnership's accounts receivable. The Court of Appeal, in upholding the provision, recognized the right of physicians who practice in partnership to enter into noncompetition agreements pursuant to section 16602. (143 Cal.App.2d at p. 392.) The court acknowledged that the plaintiff physician enjoyed the "privilege of practicing medicine anywhere in this state," and that this was a privilege which could not be withheld from him by his former partners. The court opined, however, that the partners could enter into a contract providing that if a withdrawing partner "exercises that privilege he will compensate his former partners to some extent at least for the business which he expects to take from them." (*Id.* at p. 394.) The provision was characterized as one for liquidated damages. The court noted that Civil Code section 1671 permits parties to a contract to agree to liquidated damages "when the amount of actual damage sustained by a breach thereof would be impracticable or extremely difficult to determine." (143 Cal.App.2d at p. 392.) After reviewing the evidence, the court found it sufficient to support a finding that the amount fixed as liquidated damages represented a reasonable endeavor on the part of the partners to estimate a fair compensation for the anticipated loss, and that the amount fixed bore some reasonable relation to that loss. (*Ibid.*)

The DCC partners represented to the superior court that under paragraph 13(c)(4) they would "forfeit" a significant sum of money should they decide to compete with their former partners.[9] The court, relying on *Champion* v. *Superior Court* (1988) 201 Cal.App.3d 777 [247 Cal.Rptr. 624], labeled paragraph 13(c)(4) a "forfeiture," and determined that it was "unconscionable." *Champion* involved an agreement between law partners for allocation

---

[9]HBB acknowledges that the sum the DCC partners may "forfeit" under the terms of the 1987 partnership agreement appears, on its face, to be substantial. HBB argues, however, that the evidence will show that this amount is "small in comparison with the income flow taken by the departing partners . . . as well as less than half the departing partners' share of the firm's debt, from which the partnership agreement specifically excused them."

of fees on a contingency fee case. The Court of Appeal struck down the agreement because it had no relationship to the amount of work provided to the client by the respective partners. The *Champion* agreement provided that in the event of a partner withdrawal, clients and client files would remain "the property of the Partnership" and future fees paid to a withdrawing partner in a case the partner took with him would remain "the property and asset of the Partnership." (*Id.* at p. 780.) The withdrawing partner in *Champion* argued that the provision was a violation of rule 2-107 of the Rules of Professional Conduct which stated that an attorney may not enter into an agreement for, charge or collect an unconscionable fee. The court agreed and refused to enforce the agreement. The court also reasoned that enforcement of the agreement would deny the withdrawing partner reasonable compensation for future representation, the effect of which would be to deny the client the right to retain counsel of choice by effectively making it economically infeasible for the withdrawing partner to continue to represent that client.

Nothing contained within the limited record with which we have been presented necessarily requires a finding that paragraphs 13(c)(1) and 13(c)(4) call for a "forfeiture," or a "penalty." The DCC partners make much of the fact that paragraph B(c)(4) contains the word "forfeits." We do not consider this word to be dispositive of the issue of whether the clause is a "forfeiture" provision as determined by the superior court. ■ This is in keeping with the rule that forfeitures are not favored and it is the duty of the court to interpret an agreement so as to avoid a forfeiture, if such an interpretation is reasonable. (*Petrovich* v. *City of Arcadia* (1950) 36 Cal.2d 78 [222 P.2d 231].) ■ Nor do we agree with the DCC partners when they contend that the propriety of sustaining the provision can be determined by the plain language of the partnership agreement. Without additional evidence being presented it cannot be determined whether the sum of money the DCC partners will waive should they choose to compete with their former partners can be characterized as a forfeiture when compared to their gain, and the partnership's loss, resulting from the clients whose business they have undertaken. We merely hold it is not invalid on its face.

■ We recognize the personal and confidential relationship which exists between lawyers and their clients. We do not, however, believe that such a relationship places lawyers in a class apart from other business and professional partnerships. We find no reason to treat attorneys any differently from professionals such as physicians or certified public accountants, for example, by holding that lawyers may not enter into noncompetition agreements in accordance with section 16602.

Let a peremptory writ of mandate issue, directing the respondent superior court to vacate its order granting real parties' motion for judgment on the

pleadings and to determine, in accordance with the views expressed herein, whether paragraphs 13(c)(1) and 13(c)(4), when applied to the facts amounts to an agreement for liquidated damages or an agreement resulting in a forfeiture. The parties are to be allowed to present evidence on the issue of the amount of money involved, the intent of the parties at the time they entered into the agreement, and any other facts which may aid the court in reaching its decision. Because we have determined that the contractual provisions, when read together, are not, per se, contrary to law or public policy, HBB may, upon remand, assert equitable defenses such as estoppel or waiver.

Costs to petitioner, Haight, Brown & Bonesteel.

Gates, Acting P. J., and Nott, J., concurred.

The petition of real parties in interest for review by the Supreme Court was denied December 19, 1991. Kennard, J., was of the opinion that the petition should be granted.