[No. B179662. Second Dist., Div. One. Dec. 23, 2005.]

ANDERSON, McPHARLIN & CONNORS, Plaintiff and Respondent, v. STEVEN R. YEE, Defendant and Appellant.

## COUNSEL

Kabateck Brown Kellner, Michael R. Brown, Frank E. Marchetti; Yee & Belilove and Steve R. Belilove for Defendant and Appellant.

Anderson, McPharlin & Conners and Michael S. Robinson for Plaintiff and Respondent.

## OPINION

**VOGEL, J.**—A lawyer joined a law firm and signed a partnership agreement in which he acknowledged that the firm had invested a substantial amount of money in generating business and that the firm would lose money if he left and took clients with him, and agreed that if he did leave and take clients he would make payments to the firm according to a formula spelled out in the partnership agreement. The lawyer left and took more than two dozen clients with him, then refused to satisfy his obligation to his former firm. The firm sued the lawyer and won, and the lawyer now appeals, claiming his promise to pay is a prohibited fee splitting agreement and that his contract is otherwise unenforceable. We hold that the rules prohibiting fee splitting do not apply to agreements between a partner and his own law firm and affirm the judgment.

## FACTS

### A.

Anderson, McPharlin & Connors (AMC), a law firm, was formed in 1948. Steven R. Yee, a lawyer, became an AMC partner in 2001, at which time AMC and Yee executed a partnership agreement that included the following provision: "**Section 15.8.** Liquidated Damages for Open Files. The partners mutually acknowledge that the client relationships of the firm constitute the firm's most valuable assets, the loss of any of which will cause severe damage to the firm. Such damage would be extremely difficult or impossible to calculate. The partners further mutually acknowledge that the client relationships [with] the firm have been developed using substantial financial, administrative and personnel resources of the firm, such that it would be unfair to the firm for any departing partner to enjoy the benefits of such client relationships without compensating the firm therefor. Accordingly, each partner hereby agrees that if such partner departs from the firm and, subsequent to such departure, renders legal services (directly or through any law firm . . . with which such partner associates subsequent to departure) with respect to any 'Open Files' (as that term is hereinafter defined), such partner shall pay over to the firm, as liquidated damages, an amount equal to 25% of the revenues for all legal services rendered on Open Files for 24 months after the departing partner leaves the firm, payable to the firm as received by such partner or such Associated Firm. As used herein, the term 'Open Files' means all pending matters with respect to which the firm has been engaged to perform legal services as of, or prior to, the date of the partner['s] departure from the firm. . . ."

Yee terminated his partnership interest in AMC on April 19, 2002. During the next 24 months and thereafter, he was a partner at Wolfe & Wyman (from April 22, 2002, to April 30, 2003) and then at Yee & Belilove (May 1, 2003 to the present). When Yee parted company with AMC, clients with 27 "Open Files" went with him to Wolfe & Wyman, then some went with him to Yee & Belilove. During the relevant 24-month period, those clients paid $526,635.80 in attorneys' fees on the "Open Files," 25 percent of which is $131,658.95.

## B.

In February 2003, AMC sued Yee for breach of contract and an accounting, alleging that Yee had breached section 15.8 by refusing to turn over 25 percent of the legal fees he earned from the "Open Files." Yee answered, and the case was tried to the court, with the parties stipulating to the facts set out in part A, *ante*, and to the additional fact that AMC did not obtain the consent of any of the clients to receive a share of the fees they paid to Yee after he left AMC. Yee's position was (and remains on this appeal) that section 15.8 is "an unenforceable attorney fee splitting agreement or referral agreement" under the California Rules of Professional Conduct, rule 2-200(A).[1] For its part, AMC claimed the provision was perfectly proper, and the trial court agreed, finding that, "when read carefully," section 15.8 "is not a 'fee splitting' agreement" because it "does not require the departing partner to pay to the firm a portion of the revenues generated by the 'Open Files,' but rather obligates the departing partner to pay to the firm an amount measured by the revenues generated by the files." The trial court also found there was no "fee splitting" arrangement because the parties were partners at the time the contract was made.

Yee's appeal is from the judgment thereafter entered in favor of AMC.

## DISCUSSION

## I.

Yee contends section 15.8 is unenforceable as a matter of law because its enforcement would violate rule 2-200. We disagree.

## A.

As relevant, rule 2-200(A) provides that a lawyer "shall not divide a fee for legal services *with a lawyer who is not [his] partner* . . . unless: [¶] (1) The

---

[1] All rule references are to the Rules of Professional Conduct.

client has consented in writing thereto after a full disclosure has been made in writing that a division of fees will be made and the terms of such division; and [¶] (2) The total fee charged by all lawyers is not increased solely by reason of such provision for division of fees and is not unconscionable . . . ." (Italics added.)

 By its plain language, rule 2-200(A) applies to fee splitting arrangements between one lawyer and another "who is not [his] partner . . . ." The contract at issue in this case was made between Yee on the one hand and his partners on the other, and thus cannot be viewed as an agreement by Yee or by AMC with a lawyer "who is not [his] partner." That section 15.8 would not be performed, if at all, until a time at which Yee was no longer a partner is beside the point—because the Rules of Professional Conduct that are dependent upon the continuation of a partnership relationship spell out the fact that those provisions do not survive termination of the partnership relationship. (See rule 1-500(A) [authorizing partnership agreements restricting a lawyer's practice "provided the restrictive agreement does not survive the termination of the . . . partnership relationship"].) As the trial court observed, the State Bar of California and the Supreme Court (by approving the Rules of Professional Conduct) were apparently satisfied "that fee splitting agreements entered into while members were partners did not need client consent."

In short, "the right of a client to the attorney of one's choice and the rights and duties as between partners with respect to income from unfinished business are distinct and do not offend one another. Once the client's fee is paid to an attorney, it is of no concern to the client how that fee is allocated among the attorney and his or her former partners." (*Jewel v. Boxer* (1984) 156 Cal.App.3d 171, 178 [203 Cal.Rptr. 13]; see also *Rosenfeld, Meyer & Susman v. Cohen* (1983) 146 Cal.App.3d 200 [194 Cal.Rptr. 180], disapproved on other grounds in *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 521, fn. 10 [28 Cal.Rptr.2d 475, 869 P.2d 454].)

**B.**

Yee's arguments all assume that rule 2-200(A) applies to this case. As we have explained, it does not. If it did, we would reject his arguments for other reasons.

First, section 15.8 is not a "fee splitting" agreement. It is, as the trial court found, a measure of damages due to the firm from Yee as compensation for

the money spent by the firm to generate the business that resulted in the fees. At the time Yee joined AMC, he acknowledged that the firm would suffer such damages if he left and took "Open Files" with him, and he agreed that it would be "extremely difficult or impossible to calculate" AMC's actual losses. On that basis, he agreed to the formula described in section 15.8 of the agreement.

Second, the case relied on by Yee is inapposite. *Chambers v. Kay* (2002) 29 Cal.4th 142, 156–157 [126 Cal.Rptr.2d 536, 56 P.3d 645], confirms that rule 2-200 means what it says and explains the reason for the rule, which is to protect the client's right to know who is, and who is not, representing him. Here, all of the clients were originally AMC's clients, and all knowingly elected to depart with Yee and to follow him first to Wolfe & Wyman, then to Yee & Belilove—and to pay their fees to those firms. Thus, there is no issue about the client's right to know.

■ Third, Yee's reliance on rule 2-200(B) is misplaced. Rule 2-200(B), which prohibits referral fees, provides that a member of the State Bar shall not compensate another lawyer "for the purpose of recommending or securing employment of the member or the member's law firm by a client . . . ." As explained above, Yee acknowledged at the time he became an AMC partner that the firm would suffer damages if he left, that it would be extremely difficult or impossible to calculate AMC's actual losses, and that he would comply with the formula if the conditions of its application were met. By no stretch of the imagination can section 15.8 be construed as a referral fee.

Fourth, we agree with AMC that (notwithstanding its caption) section 15.8 calls for a termination payment, not liquidated damages. As the trial court noted, AMC did not allege that Yee breached the partnership agreement by resigning from the firm or by taking the "Open File" clients with him when he left. "Indeed, these activities [were] contemplated by, and permitted under the Partnership Agreement. [AMC's] allegation of breach of contract stems from [Yee's] failure to comply with the provisions of Section 15.8 which requires a departing partner who takes 'Open Files' to compensate the firm for its loss of the files in an amount to be measured in the future by an agreed upon formulae." In short, Yee and AMC acknowledged the fact that AMC incurred substantial expenses in generating business, and they agreed that Yee's departure with clients in tow would trigger a duty on his part to

compensate AMC according to the formula set out in section 15.8. Under those circumstances, no breach was contemplated or required. (*Morris v. Redwood Empire Bancorp* (2005) 128 Cal.App.4th 1305, 1314–1315 [27 Cal.Rptr.3d 797].)[2]

## II.

Our conclusion that section 15.8 provides for a termination payment rather than liquidated damages moots Yee's contention that section 15.8 is unenforceable because its formula is unreasonably "disproportionate" to AMC's actual, anticipated damages. We nevertheless note that, had we construed section 15.8 as a liquidated damage provision, we would have found it enforceable because its presumed validity was not rebutted by Yee. (Civ. Code, § 1671; *Allen v. Smith* (2002) 94 Cal.App.4th 1270, 1278 [114 Cal.Rptr.2d 898]; *Weber, Lipshie & Co. v. Christian* (1997) 52 Cal.App.4th 645, 654–656 [60 Cal.Rptr.2d 677]; *Howard v. Babcock* (1993) 6 Cal.4th 409, 425 [25 Cal.Rptr.2d 80, 863 P.2d 150].)[3]

We reject Yee's final contention that section 15.8 constitutes an unlawful forfeiture. While a partner at AMC, Yee reaped the benefit of payments to the firm made by other departing partners who had signed the same contract and become obligated to make termination payments to the firm because they took "Open Files" with them. Having accepted the benefits of his bargain, Yee will not now be heard to complain that he ought to escape its burdens. (Civ. Code, § 1589.)

---

[2] As Division Three of the Fourth District explained in *Morris v. Redwood Empire Bancorp, supra,* 128 Cal.App.4th at pages 1314–1315 (where the question was whether a provision for a $150 fee was a liquidated damage provision or a termination payment), the contract's characterization of a particular provision is not controlling, and where (as here) a contract of indefinite duration provides for a payment upon termination (thus expressly allowing a termination at any time), the provision is taken "out of the realm of liquidated damages, which by definition are assessed only upon a breach." (*Id.* at p. 1315.)

[3] Had Yee not left and taken the 27 "Open Files" with him, AMC would have earned 100 percent of the fees earned by Yee. Section 15.8 gives AMC only 25 percent of the amount collected by Yee, and is limited both in time (to 24 months) and to the particular matters ("Open Files"). There is nothing unreasonable or onerous about section 15.8. (Compare *Haight, Brown & Bonesteel v. Superior Court* (1991) 234 Cal.App.3d 963 [285 Cal.Rptr. 845] [forfeiture of former partner's interest in firm's capital account and his share of accounts receivable]; *Howard v. Babcock, supra,* 6 Cal.4th 409 [forfeiture of former partner's interest in firm's capital account and in firm's net profits].)

## DISPOSITION

The judgment is affirmed. AMC is awarded its costs of appeal.

Spencer, P. J., and Rothschild, J., concurred.