FIFTH DIVISION
December 15, 2006

No. 1-05-3713

| | | |
|---|---|---|
| PERRY J. HOFFMAN, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant and Cross-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | No. 03 CH 21907 |
| TIMOTHY E. LEVSTIK, Individually | ) | |
| and Doing Business as Fitch, | ) | |
| Even, Tabin & Flannery, | ) | |
| an Illinois General Partnership, | ) | Honorable |
| | ) | Julia M. Nowicki, |
| Defendants-Appellees and Cross-Appellants. | ) | Judge Presiding. |

PRESIDING JUSTICE O'BRIEN delivered the opinion of the court:

Plaintiff, Perry J. Hoffman, an attorney licensed to practice law in Illinois, brought this action seeking declaratory relief against his former law firm, Fitch, Even, Tabin & Flannery, and the firm's partners (collectively referred to as defendants.) Plaintiff sought a declaratory judgment that sections 7.1, 8.3(B) and 8.4 of his partnership agreement with defendants violated Rule 5.6 of the Illinois Rules of Professional Conduct (134 Ill. 2d R. 5.6) and are against public policy. Plaintiff further sought a declaratory judgment that he was entitled to have a $1.5 million contingent fee included in the calculation of his pro rata share of defendants' cash basis profit for the portion of the year preceding his departure. The trial court granted summary judgment in favor of defendants on the validity of sections 7.1, 8.3(B) and 8.4, finding that they did not violate Rule 5.6 or principles of Illinois's public policy. The trial court further ruled that plaintiff was entitled to have the $1.5 million contingent fee included in the calculation of his pro rata share of the firm's cash basis profit. On appeal, plaintiff challenges the trial court's findings as to

No. 1-05-3713

the validity and enforceability of sections 7.1, 8.3(B) and 8.4; on cross-appeal, defendants challenge the trial court's determination as to the treatment of the $1.5 million contingent fee. We affirm on the appeal and the cross-appeal.

Plaintiff joined Fitch, Even, Tabin & Flannery (Fitch Even) as an attorney upon graduating from law school in 1992. Fitch Even trained plaintiff as a patent attorney and elected him an equity partner as of January 1, 2000. Plaintiff signed the partnership agreement on October 27, 2000.

The partnership agreement required Fitch Even's partners to periodically contribute capital to fund the operations of the firm, and these contributions are referred to in the agreement as "paid-in capital." In the event of a partner's termination (whether by voluntary withdrawal, expulsion, death, or otherwise), the agreement provides that such partner's paid-in capital generally is returned by March 1 of the year following that partner's separation from the firm. However, in the circumstances of a partner's voluntary withdrawal from the firm, section 8.3(B) of the partnership agreement provides that the firm may reduce payments of paid-in capital by the greater of one-half the balance or $50,000. Section 8.3(B) contains a provision whereby a withdrawing partner may request a waiver of the deduction by majority vote of the remaining partners.

The partnership agreement also provides for an unfunded benefit known as "retirement capital," which is paid only to those partners of Fitch Even who end their legal careers by retiring from the firm and the practice of law. Section 8.4 of the agreement specifies the sole circumstance under which a partner may receive retirement capital:

"Only a partner who terminates by reason of death, or full retirement, or who is a partner in transitional retirement, or who meets the provisions of Section 8.10, or who is disabled, is eligible to receive payments from his or her Retirement Capital Account."

Retirement capital paid to retired partners is taken from the firm's current income. Partners forfeit their retirement capital balances when they withdraw from Fitch Even for any reason other than retirement.

The agreement also contains provisions that determine a withdrawing partner's effective date of termination for purposes of calculating his pro rata share of the firm's cash basis profit for the portion of the year preceding withdrawal.  Section 7.1 provides that upon written notice of a partner's withdrawal, three possibilities exist for determining the effective date of that withdrawal.  Section 7.1 states:

"The effective date of termination upon such withdrawal shall be the end of the calendar month preceding the written notice unless such written notice is given on the last day of a month, in which event that day shall be the effective date of termination; provided, however, that the remainder of the partners by a three-fourths vote *** may require the effective date of termination to be at an earlier time no earlier than the end of the calendar month two months prior to the calendar month in which such written notice was given."

On May 28, 2002, plaintiff orally informed Fitch Even partner Timothy Levstik that he would be leaving the partnership. The following day, on May 29, 2002, Mr. Levstik confirmed plaintiff's withdrawal in writing.  Upon his withdrawal from Fitch Even, plaintiff joined the firm

No. 1-05-3713

of Michael, Best & Friedrich.

Defendants paid plaintiff his pro rata share of the firm's cash basis profit for the term January 1, 2002, to March 31, 2002, which was the effective date of plaintiff's termination as calculated by the defendants pursuant to section 7.1 of the partnership agreement. Plaintiff claimed that his pro rata share of the firm's profits should have been calculated based on a contingency fee received by Fitch Even during 2002 after plaintiff withdrew from the partnership. Defendants declined to include the contingency fee in calculating plaintiff's share of pre-withdrawal profits.

Plaintiff also requested that defendants distribute to him his paid-in capital. Plaintiff's paid-in capital had a balance of $18,059.98 as of the effective date of his resignation. Since that amount was less than $50,000, defendants determined that, under section 8.3(B) of the partnership agreement, plaintiff was not entitled to any distribution from the paid-in capital account. Because plaintiff did not retire from Fitch Even and the practice of law, defendants made no retirement payments to him.

As discussed, plaintiff then sought a declaratory judgment that sections 7.1, 8.3(B), and 8.4 of the partnership agreement violated Rule 5.6 of the Illinois Rules of Professional Conduct and are against public policy. Plaintiff also sought a declaration that he was entitled to have the $1.5 million contingent fee included in the calculation of his pro rata share of defendants' cash basis profit for the portion of the year preceding his departure. The trial court granted summary judgment for defendants on the validity of sections 7.1, 8.3(B), and 8.4 of the partnership agreement, finding that they did not violate Rule 5.6 or principles of Illinois' public policy. The

No. 1-05-3713

trial court further ruled that plaintiff was entitled to include the $1.5 million contingent fee in the calculation of his pro rata share of the firm's cash basis profit.

I. Plaintiff's Appeal

Plaintiff appeals the order granting summary judgment for defendants on the validity of sections 7.1, 8.3(B), and 8.4 of the partnership agreement. Summary judgment is appropriate where the pleadings, depositions and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Adams v. Northern Illinois Gas Co., 211 Ill. 2d 32, 43 (2004). Review is de novo. Adams, 211 Ill. 2d at 43.

In the present case, there are no genuine issues of material fact; the only issue on review is whether, as a matter of law, sections 7.1, 8.3(B), and 8.4 of the partnership agreement violate Rule 5.6 of the Illinois Rules of Professional Conduct and are against public policy. Rule 5.6 states:

"A lawyer shall not participate in offering or making:

(a) a partnership or employment agreement that restricts the rights of a lawyer to practice after termination of the relationship, except an agreement concerning benefits upon retirement[.]" 134 Ill. 2d R. 5.6(a).

Plaintiff contends that sections 7.1 and 8.3(B) of the partnership agreement (the provisions relating to paid-in capital and the effective date of termination) provide financial disincentives to the withdrawing attorney, thereby violating Rule 5.6. In support, plaintiff primarily relies on Stevens v. Rooks Pitts & Poust, 289 Ill. App. 3d 991 (1997).

-5-

No. 1-05-3713

In Stevens, the appellate court found the law firm's employment agreement therein violative of the public policy underlying Rule 5.6. Stevens, 289 Ill. App. 3d at 999. The agreement limited compensation payable to any withdrawing partner if the partner competed with the firm in a certain geographical area. Stevens, 289 Ill. App. 3d at 999. By contrast, sections 7.1 and 8.3(B) of the partnership agreement at issue here are not conditioned upon the departing partner's agreement to refrain from competing with defendants.

Plaintiff contends, though, that any financial disincentive should be found to violate Rule 5.6. However, as noted by the trial court below, Stevens did not make such a blanket holding. The Stevens court noted that "Illinois public policy strongly favors freedom to contract" (Stevens, 289 Ill. App. 3d at 998) and that the provision in that case violated Rule 5.6 only because it required "the departing lawyer to give up certain compensation due to him if he competes with the firm in a certain geographic area within one year after his departure." Stevens, 289 Ill. App. 3d at 999. No such noncompetition restrictions are present here.

Our supreme court has held that Rule 5.6 is designed to afford clients greater freedom in choosing counsel and to protect lawyers from onerous conditions that would unduly limit their mobility. Dowd & Dowd, Ltd. v. Gleason, 181 Ill. 2d 460, 481 (1998). Sections 7.1 and 8.3(B) of the partnership agreement at issue did not unduly limit plaintiff's mobility or hamper his clients from choosing counsel. Plaintiff testified in his deposition that, after withdrawing from Fitch Even, he joined Michael Best & Friedrich. Plaintiff further testified:

"Q. Any client of yours have a problem moving his business from Fitch Even over to Michael, Best & Friedrich?

-6-

A. Ultimately, I don't believe so.

Q. So none of these--no provision of this contract that you know of interfered with the free choice of your clients of who their counsel would be; isn't that right?

***

A. I don't believe so."

On these facts, then, sections 7.1 and 8.3(B) of the partnership agreement did not violate Rule 5.6 or the principles of public policy underlying the rule.

Next, plaintiff contends that section 8.4 of the partnership agreement, which provides certain rules and conditions for the payment of funds from the retirement capital account, provided a financial disincentive for the withdrawing attorney, thereby violating Rule 5.6. Defendants respond that section 8.4 provides for retirement benefits, and thus is specifically excepted from the requirements of Rule 5.6. See 134 Ill. 2d R. 5.6 (providing that the rule prohibiting a partnership agreement from restricting the rights of a lawyer to practice after termination of the relationship does not apply to "an agreement concerning benefits upon retirement"). Plaintiff counters that the payment to partners under section 8.4 is not a retirement benefit but, rather, is treated as capital. We need not resolve this issue because the partnership agreement, of which section 8.4 is a part, did not unduly limit plaintiff's mobility or hamper his clients from choosing counsel. Thus, section 8.4 did not violate Rule 5.6 or the public policy underlying the rule. See our discussion above.

Next, plaintiff makes a one-paragraph argument that sections 7.1, 8.3(B) and 8.4 constitute "illegal liquidated damages clauses" and he cites Stevens in support. As discussed

above, the law firm's employment agreement in <u>Stevens</u> violated the public policy underlying Rule 5.6 because it limited compensation payable to any withdrawing partner if the partner competed with the firm in a certain geographical area within one year after his departure. <u>Stevens</u>, 289 Ill. App. 3d at 999. The appellate court rejected the argument that the offending clause was enforceable as a liquidated damages clause, holding that a liquidated damages clause is unenforceable if it provides for noncompetition restrictions in violation of Rule 5.6. <u>Stevens</u>, 289 Ill. App. 3d at 1000. In the present case, the partnership agreement at issue is not violative of Rule 5.6 and therefore <u>Stevens</u> is inapposite; <u>Stevens</u> provides no support for plaintiff's position that sections 7.1, 8.3(B), and 8.4 of the partnership agreement are unenforceable as illegal liquidated damages.

Accordingly, we affirm the portion of the trial court's order finding that sections 7.1, 8.3(B), and 8.4 do not violate Rule 5.6.

II. Defendants' Cross-appeal

Defendants cross-appeal from the portion of the trial court's order declaring that plaintiff was entitled to have a $1.5 million contingent fee included in the calculation of his <u>pro rata</u> share of the firm's cash basis profit. Defendants contend that plaintiff was not entitled to any portion of the $1.5 million contingent fee, as it was paid to Fitch Evens in the year of plaintiff's withdrawal, but was received <u>after</u> the date of his resignation. The trial found:

> "Section 8.2(A)(1) provides that 'a terminated partner's share of the Partnership cash basis profit or loss for the portion of the calendar year preceding the partner's effective date of termination shall be determined at the end of that calendar year, as of the

effective date of termination.'  Thus, as long as the contingent fee is considered a profit for the portion of the calendar year preceding the plaintiff's effective date of termination, it should be included in the calculation of plaintiff's share of the Partnership cash basis profit."

The trial court correctly construed section 8.2(A)(1) of the partnership agreement. Accordingly, we affirm on the cross-appeal.

For the foregoing reasons, we affirm on the appeal and cross-appeal.

Affirmed.

TULLY, J., and O'MARA FROSSARD, J., concur.