**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

—————

**No. 06-1466**

—————

KENNETH M. MCGOUGH,

Plaintiff - Appellee,

versus

NALCO COMPANY, an Illinois Corporation,
formerly Nalco Chemical Company and Ondeo
Nalco Company,

Defendant - Appellant.

—————

Appeal from the United States District Court for the Northern
District of West Virginia, at Elkins.  Joseph Robert Goodwin,
District Judge.  (2:05-cv-00074-JRG)

—————

Argued:  September 18, 2006          Decided:  October 19, 2006

—————

Before NIEMEYER, MICHAEL, and MOTZ, Circuit Judges.

—————

Vacated and remanded by unpublished per curiam opinion.  Judge
Niemeyer wrote a separate concurring opinion.

—————

**ARGUED:**  Philip J. Murray, III, THORP, REED & ARMSTRONG, L.L.P.,
Pittsburgh, Pennsylvania, for Appellant.  Gerard Ray Stowers,
BOWLES, RICE, MCDAVID, GRAFF & LOVE, P.L.L.C., Charleston, West
Virginia, for Appellee.  **ON BRIEF:** Robert J. Hannen, THORP, REED &
ARMSTRONG, L.L.P., Pittsburgh, Pennsylvania, for Appellant.

—————

Unpublished opinions are not binding precedent in this circuit.
See Local Rule 36(c).

PER CURIAM:

Nalco Company appeals from an order denying its motion for preliminary injunction against Kenneth McGough, a former Nalco employee. Nalco had sought to enjoin McGough from "competing with Nalco within any geographic region" in which McGough had worked while employed by Nalco, and from disclosing "any of Nalco's confidential information." Nalco based its claims on a contractual non-competition provision, a contractual non-disclosure provision, and a West Virginia trade secrets statute. We find no error in the denial of preliminary injunction on the contractual non-competition claim but must vacate the order denying injunctive relief and remand for further proceedings because of the district court's failure to address the anti-disclosure or trade secrets claims.

I.

Nalco is a water-treatment chemical company, incorporated in Delaware and headquartered in Illinois, with approximately twenty-six separate lines of business. It engages in fine coal recovery, which allows preparation plants to recover bits of coal as small as .01 millimeter in size. Nalco assists with this process by developing a unique chemical program to be used in each plant, the composition of which is not disclosed to the customer.

McGough, a domiciliary of West Virginia, began work with Nalco in 1978 as a twenty-four-year-old entry-level employee. He

continued to work for Nalco for twenty-seven years until he left in 2005 to work for a competitor. McGough's title and responsibilities changed a number of times over his long career, but he worked primarily to provide fine coal recovery services to coal preparation plants. A full description of McGough's evolving duties is set forth in the district court's opinion. See McGough v. Nalco Co., 420 F.Supp.2d 556 (N.D.W.Va. 2006). We will limit our factual recitation to those relevant to this appeal.

From 1978 to 1989 McGough worked as a sales representative in the coalfields of Alabama. In 1989, McGough assumed new sales territory in West Virginia and relocated there with his family. Apart from a brief stint in Birmingham, Alabama in 1991, McGough has been working, at least in part, in West Virginia ever since. During the last two years of his employment with Nalco, McGough was an "industry technical consultant" servicing the coal industry in the eastern coal fields. During this period McGough assisted plants in Indiana, Illinois, Kentucky, Ohio, West Virginia, Pennsylvania, Virginia, Alabama, Washington, and eastern Canada.

Citing dissatisfaction with the work, McGough left Nalco's employment on July 12, 2005. Soon thereafter, he entered into a non-exclusive consulting agreement with Appalachian Chemical Services ("ACS"), a Nalco competitor. ACS, a new company, was founded in March 2005 by Larry Hyatt, McGough's former boss at Nalco. Prior to McGough's leaving Nalco, ACS did not have any

customers. After McGough began consulting for ACS, however, ACS gained at least four coal preparation plant customers that had been Nalco customers prior to McGough's departure. McGough's duties at ACS primarily consisted of "rendering service" to these ex-Nalco plants. McGough's employment by ACS, a Nalco competitor, became the source of this dispute with Nalco.

Shortly after beginning his employment with Nalco in Alabama, McGough signed a "Field Representative Agreement" ("Agreement") which contained a covenant not to compete for a period of two years following termination of employment and non-disclosure provisions that applied during employment as well as after termination. None of these clauses is limited specifically to coal recovery; each covers Nalco's full business line. The Agreement was not job-specific, nor was it ever supplemented, amended, or re-adopted by McGough.

The lengthy non-competition clause (paragraph 5) provides in relevant part:

> Employee will not, directly or indirectly, during his employment and for the period of two (2) years immediately after its termination, engage or assist in the same or any similar line of business, competing with the line of business now or hereafter conducted or operated by Nalco during the term of Employee's employment by Nalco, whether as consultant, employee, officer, director, or representative of such competing business, within the United States of America, provided, however, that in the event that the Employee's position with Nalco immediately prior to termination is that of field representative, then the geographic area of this non-competition covenant shall be limited to that geographic area within the United States of America for

which Employee was responsible at any time during the two year period immediately preceding termination . . . [1]

The parties dispute whether McGough was a "field representative" at the time of his termination, such that a restriction on his employment would be limited to a nine-state geographic area.

Also in the Agreement, two clauses address the non-disclosure issue. Paragraph 3 of the Agreement addresses business information, generally. It reads:

> Employee shall not, directly or indirectly, under any circumstances or at any time, either during the term of his employment or after its termination, communicate or disclose to any person, firm, association or corporation, or use for his own account, without Nalco's consent, any information acquired by him in the course of or incident to his employment, relating to or regarding the names of customers of Nalco or Third Parties, the sales or service data of Nalco or Third Parties, furnished to him or secured by him in the course of his employment, or any other data or information concerning the business and activities of Nalco or Third Parties.

Paragraph 2 of the Agreement is similar but prohibits communication, disclosure or use of "technical information," defined as "inventions, discoveries, improvements, machines, devices, processes, products, formulae, designs, projects, mixtures and/or compounds, whether patentable or not."

On the day he gave Nalco notice of his resignation, McGough instituted a declaratory judgment action to determine whether the Agreement placed any enforceable restrictions on his future

---

[1]The provision closes with a clause explicitly inviting any court that finds the reach of the provision to be too broad to pare the covenant down to acceptable limits.

employment.  Nalco subsequently removed the case to the District Court for the Northern District of West Virginia, based upon the diversity of citizenship, see 28 U.S.C. § 1332(a) (2005), and added counter-claims for injunction, breach of contract, and violation of West Virginia's Uniform Trade Secrets Act (the "UTSA"), see W.Va. Code § 47-22-1 et seq. (2006).  Nalco also moved for a preliminary injunction seeking to prevent McGough, in effect, from continuing to work at ACS during the pendency of the litigation.  After a two-day hearing that included testimony and admission of documentary evidence, the district court denied Nalco's motion for preliminary injunction.

A preliminary injunction is an "extraordinary remed[y] involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances."  Microstrategy Inc. v. Motorola, Inc., 245 F.3d 335, 339 (4th Cir. 2001).  We review a denial of a motion for preliminary injunction for an abuse of discretion.  Nat'l Audubon Soc. v. Dep't of Navy, 422 F.3d 174, 200 (4th Cir. 2005).  A district court's order will be considered an abuse of discretion only if it is guided by erroneous legal principles or if it rests upon a clearly erroneous factual finding. Bryte ex rel. Bryte v. Amer. Household Inc., 429 F.3d 469, 475 (4th Cir. 2005).  Although we review legal conclusions de novo, factual findings cannot be reversed unless we find clear error. See, e.g., Nat'l Audubon, 422 F.3d at 200.

Blackwelder Furniture Company of Statesville, Inc. v. Selig Manufacturing Company, Inc., 550 F.2d 189 (4th Cir. 1977), sets forth the law governing the grant of preliminary injunctions in the Fourth Circuit. A court considers four factors: the likelihood of irreparable harm to the moving party if the preliminary injunction is denied, the likelihood of harm to the non-moving party if the injunction is granted, the likelihood that the moving party will succeed on the merits of his claim, and the public interest. See, e.g., Rum Creek Coal Sales, Inc. v. Caperton, 926 F.2d 353, 359 (4th Cir. 1991).

## II.

Initially, Nalco contends that the district court erred in refusing to grant injunctive relief on its non-competition claim. In fact, the district court carefully applied the Blackwelder analysis to that claim.

First, the court determined that Nalco would suffer irreparable harm in the absence of a preliminary injunction on the non-compete claim. Specifically the district court found that losing an employee considered "irreplaceable," as Nalco considered McGough, would detrimentally affect any company. See McGough, 420 F.Supp.2d at 564. Further, the court found it "almost without question" that, if the non-compete clause were enforceable, McGough breached it. Id. At the same time, however, the court

-7-

found the amount of harm to Nalco tempered by evidence that Nalco might have lost accounts to ACS even without McGough's employment there, on the strength of Larry Hyatt's expertise and contacts alone.

Moving to the other side of the scale, the court then determined that McGough, the non-moving party, would also suffer significant harm if a preliminary injunction were issued enforcing the non-compete clause because he would be forced to resign from his job with ACS and find a new job. The court found that this hardship would occur regardless of whether McGough was treated as a field representative, subject to a more limited geographic non-compete bar, or whether he was subject to the nationwide restriction. In balancing the hardships that would be faced by each party, the court found that they approached equipoise.

Because Nalco, the moving party, had not established that the hardships clearly weighed in its favor, it had to prove that it was highly likely to succeed on the merits in order to win a grant of preliminary injunction. This, the district court found, it could not do. In assessing the likelihood of success on the non-compete claim, the district court first carefully analyzed applicable West Virginia conflict-of-law principles and determined that a West Virginia court asked to enforce the Agreement would apply West Virginia contract law to the dispute because that state had the "most significant relationship" to the Agreement. See McGough, 420

-8-

F.Supp.2d at 566 (citing New v. Tac & C Energy Inc., 355 S.E.2d 629, 631 (W.Va. 1987)). We find no legal error in the district court's analysis as to choice of law,[2] although we recognize that West Virginia law provides no clear answer on this question. Compare Paul v. Nat'l Life, 352 S.E.2d 550, 551 (W.Va. 1986) (reaffirming lex loci delicti as the general conflicts rule in West Virginia) with New, 355 S.E.2d at 631 (explicitly applying section 196 of the Second Restatement to employment agreement dispute).

Applying West Virginia law, the district court then concluded that a West Virginia court would find the non-compete clause unreasonable on its face and consequently refuse to "blue pencil" it. See Reddy v. Cmty. Health Found. of Man, 298 S.E.2d 906, 911-15 (W.Va. 1982) (describing the requirement that a restrictive covenant fall within the governing principle of the rule of reason before a court may undertake to "blue pencil" it). The district court recognized that the reasonableness of the non-compete clause, and hence the likelihood that it would be blue pencilled, would depend, in part, upon how geographically broad the fact-finder determined its application to be. Compare O. Hommel Co. v. Fink, 177 S.E. 619 (W.Va. 1934) (finding reasonable, and blue pencilling,

---

[2]Indeed, we note that in initially requesting injunctive relief, Nalco itself relied entirely on West Virginia law, conceding sub silentio its applicability; only after the district court raised the issue and asked for additional briefing on the question of what law should govern the Agreement, did Nalco contend that Alabama law controlled.

a three-year restrictive covenant encompassing Canada and the eastern United States) with <u>Pancake Realty Co. v. Harber</u>, 73 S.E.2d 438, 443 (W.Va. 1952) (finding unreasonable and refusing to blue pencil a covenant not to compete that contained no territorial limitation). On the basis of the facts presented at the preliminary injunction hearing, the district court determined that the clause, if applied to McGough, would act as a nationwide bar on competition, rather than applying only to the more limited nine-state area in which McGough had worked over the previous two years. <u>McGough</u>, 420 F.Supp.2d at 578. Based upon this assessment of the clause's geographic and industry breadth, the district court found that the non-compete clause offended the rule of reason under West Virginia law and would be unlikely to be blue pencilled. <u>Id</u>. at 578-79.

To the extent that Nalco argues the district court erred in this or other findings of fact underlying its analysis of injunctive relief with respect to the non-compete clause, we disagree. Based on the limited evidence adduced at the preliminary injunction hearing, we cannot say that the district court clearly erred with respect to any factual finding. We caution, however, that this does not mean that, after development of a fuller record, a fact finder (or court on summary judgment) might not come to contrary conclusions with respect to the facts.

III.

Nalco also contends that the district court erred in failing to address two additional grounds for the grant of a preliminary injunction: McGough's alleged breach of the non-disclosure provisions of the Agreement and his alleged misappropriation of trade secrets under West Virginia's UTSA.

"[I]n granting or refusing interlocutory injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action." Fed. R. Civ. P. 52(a). A failure to consider and rule upon a purported ground for a preliminary injunction may require remand. <u>First-Citizens Bank & Trust Co. v. Camp</u>, 432 F.2d 481, 484-85 (4th Cir. 1970); <u>see also</u> <u>Mayo v. Lakeland Highlands Canning Co.</u>, 309 U.S. 310, 316 (1940) ("It is of the highest importance to a proper review of the action of a court in granting or refusing a preliminary injunction that there should be fair compliance with Rule 52(a) of the Rules of Civil Procedure.").

In its motion for preliminary injunction, Nalco asked that McGough be enjoined from "directly or indirectly <u>competing</u> with Nalco within any geographic region that Mr. McGough worked while employed by Nalco, <u>and</u> from <u>disclosing and/or using</u> any of Nalco's confidential information / trade secrets at any location or in any capacity" (emphasis added). In the memorandum accompanying its motion, Nalco indicated that it relied on two independent legal

-11-

theories for enjoining McGough's disclosure of confidential information or use of trade secrets: a contract theory based upon the Agreement and a statutory theory premised on the UTSA.

As has been previously discussed, the district court made numerous factual and legal findings on the issue of McGough's competition with Nalco. We find no evidence of similar findings of fact or law with regard to Nalco's second request, that McGough be enjoined from "disclosing and/or using" confidential information or trade secrets. This was error.

Although the district court made passing reference to the trade secret claim, its discussion and analysis focuses almost exclusively on the covenant not to compete. McGough, 420 F.Supp.2d at 573-79. The court never specifically analyzed the disclosure provisions of the Agreement or referred to or cited the UTSA. The district court's failure to make specific findings of fact or law on either the non-disclosure or trade secrets grounds for a preliminary injunction cannot be considered harmless. Indeed, consideration of these grounds may alter the Blackwelder balancing of hardships.

IV.

For the foregoing reasons, we must vacate the denial of a preliminary injunction and remand for further proceedings not inconsistent with this opinion.

VACATED AND REMANDED FOR FURTHER PROCEEDINGS

NIEMEYER, Circuit Judge, concurring:

I concur in the opinion for the court and write separately only to note that the district court's conclusion that the non-compete clause was unreasonable was dependent on the court's finding that McGough was not a "field representative." Because of that finding, the non-compete clause had a geographical scope covering the entire nation. As we point out, however, this fact could only have been determined preliminarily in the context of whether to grant a preliminary injunction. Any ultimate finding on that point, whether by the court or by the jury, could be different and therefore could result in a much reduced geographical application of the non-compete clause. In that circumstance, a different analysis under West Virginia law would be required.